| 20 | 85 |
| 83 | 599 |
| 20 | 85 |
| 122 | 132 |
| 20 | 85 |
| 127 | 328 |

## THE STATE OF IOWA v. COLLINS.

1. Instructions: METHOD OF CHARGING THE JURY. The practice of giving instructions to the jury, as framed by counsel, is condemned. The better practice, as a general rule, is for the judge to put aside the instructions asked by the respective counsel, and cover the whole ground of the controversy in a corrected and methodical charge of his own, stating the questions of fact to be decided, and the law applicable thereto, under the issues and the evidence.

2. Evidence: WIFE AS A WITNESS IN CRIMINAL ACTIONS. On the trial of an indictment, the wife of the defendant was introduced as a witness for her husband; her testimony was corroborated by the evidence of another witness, while there were circumstances which tended to contradict her:

The State of Iowa v. Collins.

*Held*, that the court erred in instructing the jury, that if her testimony is against *established facts,* by other competent testimony, the jury may .give it but little weight, or may wholly disregard it.

3. Criminal law: ALIBI. It may be that a fabricated defense of *alibi* to an indictment would be a circumstance of weight against the defendant, though it would not be conclusive of his guilt; but an unsuccessful attempt to establish an *alibi* is not of itself a circumstance of great weight against the defendant, and does not imply an admission of the truth or relevancy of the facts alleged against him.

4. —— DIVERTING SUSPICIONS. When the evidence showed that the defendant had made certain statements touching the relation of another party to the property stolen; that such statements *were true* but did not amount to a direct charge that such person was implicated in the robbery; it was held erroneous to instruct the jury, that if the defendant believed that such person "was innocent, and yet for the purpose of diverting suspicion from himself endeavored to cast suspicion upon such other person," a strong presumption arises of the defendant's guilt.

5. —— CIRCUMSTANTIAL EVIDENCE: BELIEF OF JUROR. Where the court instructed the jury that circumstantial evidence "is sufficient for the purpose when it excludes disbelief, that is actual and not technical disbelief, for he who is to pass upon the question *is not at liberty to disbelieve as a juror while he believes as a man; it is enough that his conscience is clear,"* it was held, that without explanation *it* was calculated to mislead the jury.

6. New trial: VERDICT AGAINST EVIDENCE. The Supreme Court will cautiously interfere with verdicts on the ground that they are not sustained by the evidence; but will exercise the power to reverse a judgment on that ground when it is made clear and manifest that it should be done.

*Appeal from Bremer District Court.*

THURSDAY, FEBRUARY 1.

PRACTICE: MODE OF INSTRUCTING JURY: TESTIMONY OF WIFE: ALIBI: CIRCUMSTANTIAL EVIDENCE: QUANTUM OF PROOF: NEW TRIALS IN CRIMINAL CASES, &C. —— The defendant was indicted in Floyd, and the venue changed to Bremer county. The defendant was the clerk of L. L. Huntley, county treasurer of Floyd county.

The first count of the indictment charges the defendant with the embezzlement of money and United States bonds

of the value of $2,000, the property of Huntley. The second count is for the larceny of the same property, also alleged to belong to Huntley. Plea, not guilty. Trial to jury and verdict of guilty.

The evidence is all in the record.

The testimony shows, that the defendant was the clerk of Huntley, county treasurer. That on the 27th day of June, 1865, in the night time, the safe in the office was blown open by *some one*, and money and bonds to the value of over $2,300 were stolen, and that defendant had charge of the office and safe on the 27th day of June, and had possession of the keys of both.

The theory of the State was, that defendant had entered the room where the safe was, in the night time, by means of the key to the room, and had opened the safe by means of the key thereto, and taken the property, and to disguise this, had caused powder to be inserted into the key hole of the safe and exploded, and the outside window pane (large enough to admit a person) to be removed, and the window raised, thereby seeking to create the impression, or give the appearance, that the room and safe had been entered by force. This theory was controverted by the defendant, he contending that the evidence showed that the room had been entered by the window and the safe entered by means of powder, a handspike and ax, which were shown to have been taken from, and to belong to, a mill in the immediate vicinity.

The evidence covers over one hundred pages in the record. It is impossible, within any reasonable limit, to given even a synopsis of it. Nor is this necessary to understand the legal questions decided in the opinion.

The defendant appeals. The errors assigned, with the other necessary facts, will be found in the opinion of the court.

*W. T. Barker* for the appellant.

I. There is a difference between a belief as a juror and as a man. The rule stated might be correct when applied to belief of a witness, or the conclusion to be drawn from, or arrived at from the weight or preponderance of evidence as in civil cases, but not in criminal cases where the presumption of innocence is to be overcome. In criminal cases *legal conviction* is requisite. There are many instances where moral conviction of guilt is not sufficient to authorize a conviction, as, for example, where the evidence is a confession out of court, or the testimony of an accomplice (see §§ 4102 and 4808 of the Revision), also in all cases where proof of the *corpus delicti* is required to be proved.

II. The jury should not wholly disregard the testimony of any witness who has not been impeached but should weigh it, and give it such weight as it is entitled to under the circumstances.

3. The tenth instruction is erroneous, in holding that the jury are authorized to disregard the defendant's declarations, given in evidence by the State, although such declarations were not improbable or contradicted by evidence. The correct rule is, " the law requires the whole confession to be taken all together, as well that which makes for the prisoner as that which makes against him. The law does not, however, require the adoption of the *whole* confession, if other evidence in the case proves any part of the confession to be untrue. 3 Park. Cr. Cas., 438."

4. The wife testified to nothing against established facts. The instruction assumes that the fact of her being a wife is ground for suspicion against her truthfulness. The instruction is not supported by the reasoning or decision in *The State of Iowa* v. *Guyer*, 6 Iowa, 263.

5. The ninth instruction is erroneous in law. The facts upon which the instruction is based, if true, would only be

a circumstance to be considered by the jury against the defendant, but not sufficient to overcome the presumption of innocence. If this instruction be correct, the State need not have proven any other fact. A "strong presumption of guilt" is sufficient to convict, unless rebutted.

6. The eleventh instruction, on the part of the State, affirms that a failure to establish an *alibi*, if attempted, "implies an admission of the truth and relevancy of the facts alleged" — that it is a plea of confession and avoidance. It is easy to imagine how an innocent man, by a mistake of his own or his counsel, might easily be convicted under this rule. The instruction cannot be sustained by reason or authority. *Commonwealth* v. *McKie*, 1 Lead. Crim. Cases, 347, and note of editors; *Commonwealth* v. *Webster*, 5 Cush., 320.

*F. E. Bissell*, Attorney-General, for the State.

1. The fourth instruction is not erroneous.

The jurors are told, that if the *evidence* excludes disbelief in their minds, that is sufficient, and such evidence as produces this belief in their minds, as men, is all that is required. 1 Whart. Am. Cr. Law, 740.

2. The jury are the sole judges of the weight to give the wife's evidence, and may give it no weight. See *State of Iowa* v. *Guyer*, 6 Iowa, 263.

3. The presumption would certainly be a strong one, where one should attempt to throw suspicion on a man he believed to be innocent, to shield himself from supposed suspicion. 1 Whart. Am. Cr. Law, 714, 715.

4. The jury are not directed to *disbelieve* the statements of defendant, but to treat it as other evidence. The instruction is quite as favorable to the defendant as the law will justify. There was no error in the tenth instruction. 1 Greenl. Ev., § 278.

5. The instruction as to the effect of an attempt to prove an *alibi* was correct. Burr. Cir. Ev., 519.

6. The defendant asked the court in substance to instruct the jury, that legal evidence, which produced a moral conviction in their minds of the guilt of the defendant, would not be sufficient.

The court instructed the jury that legal evidence, when it produced moral certainty in their minds, was sufficient. The court undoubtedly gave the law to the jury on this point. *Commonwealth* v. *Webster*, 5 Cush., 313, 319.

7. If the instructions given by court are correct, as far as they go, but do not contain the whole law, nor all the qualifications, the defendant should have asked the court to give the qualifications, and if the court had refused, it would have been error. *Miller* v. *Bryan*, 3 Iowa, 58 ; *Ault* v. *Sloan*, 4 Id., 508.

DILLON, J. — The court below did not give any charge of its own to the jury, but gave a series of eleven instruc-
tions, in the language in which the State's attorney framed them, relating to detached portions of the cause; and, also, gave and modified, and refused to give, other instructions asked by the defendant's counsel.

1. INSTRUCTION: method of charging the jury.

The object of instructions is to give the jury clear and correct notions of the nature of the case and of the law applicable thereto. Instructions which would be proper in one case would be improper, because inapplicable, in another. When a principle of law, applicable to the case before the court, is correctly stated in an instruction asked by counsel, it is just as well to give it in their language as to embody it in the charge of the court.

And yet, in most cases, a set of instructions framed by counsel, although when closely examined they may not be abstractly incorrect, have a bias and coloring and incom-

pleteness which they would not possess, if they had passed through the alembic of the judge's mind and *there* received their distinctive character. Originating with the advocate, they are apt to bear abundant marks of their origin, and to be characterized by *his* bias, rather than by the impartiality of the judge. The opposite attorney adroitly frames a set of counter instructions, also abstractly correct, it may be, and not positively conflicting with those of his adversary, and yet, to the mind of the juror, untutored in legal analysis and investigation, irreconcilable with them. And in this way instructions, the office of which is to enlighten and to guide, may, and often do, serve but to darken and confuse.

The practice of thus practically allowing counsel to instruct the jury is quite common in this State, and we avail ourselves of this occasion to do now, what we might profitably have done before, express our disapprobation of it. We are aware that district judges frequently pursue this course for fear of committing error if they refuse. The better practice, as a general rule, is for the judge to put aside the instructions asked by the respective counsel, and cover the whole ground of the controversy in a corrected and methodical charge of his own, stating the questions of fact to be decided, and the law applicable thereto under the issues and the evidence.

There is, we are satisfied, no one thing which will more efficiently conduce to an intelligent trial of causes than the adoption of the course here recommended. All that an appellate court demands, is to know that the cause has been intelligently tried, and the law applicable to its particular circumstances, not abstractly and vaguely, but closely, fittingly, clearly and decisively stated.

The instructions of the State, in the case before us, are made up to a great extent of isolated and fragmentary extracts from various text books and adjudged cases. The

objection to them are two-fold: 1st. The attorney in some instances has selected only that portion of the text or case which makes in his favor, and omitted the qualifications or exceptions; and 2d. The portion selected is, under the special circumstances of the case, inapplicable and calculated to mislead.

With these general observations, which we repeat have no especial reference to the learned judge below, or the effective district attorney, but are intended to have a broader application than to the present case, we proceed briefly to notice some of the instructions assigned as error by the appellant.

I. The wife of the defendant was, under the statute, examined as a witness on his behalf. The main object of her testimony, was to show that the defendant was at home at the time when it was probable the robbery was taking place. Her testimony, in this respect, was corroborated by Miss French, and by circumstances stated by other witnesses. It may be admitted that there were circumstances looking the other way. In this attitude of the case, the State asked and the court gave this instruction: "The wife may be a witness for her husband in criminal cases, but if her testimony is against established facts, by other competent testimony, the jury may give it but little weight, or may wholly disregard it."

This instruction is open to two serious objections. First, her testimony was not against *established facts*, in the sense and meaning of the rule, but it related to *controverted* facts. Second, the instruction was intended to be warranted by the opinion in *The State* v. *Guyer*, 6 Iowa, 263, and yet, by recurring to the exposition of the law on this subject as there given, it will be seen how the brief and partial view of the law, contained in the instruction, "was calculated to produce a wrong impression, and to weaken the testimony

of the witness, to an extent, which would be unfair and unjust to the prisoner."

The proper directions to the jury on this subject can readily be collected from that case and need not now be repeated.

II. At the instance of the State, the court gave this instruction: "If you find that there has been an unsuccessful attempt to establish an *alibi*, it is a circumstance of great weight against the defendant, and implies an admison of the truth and relevancy of the facts alleged."

3. CRIMI-NAL LAW: alibi.

We have no hesitation in pronouncing this instruction to be erroneous. Although it has the semblance of authority, it has none in reason or justice, and was wholly unwarranted by the circumstances of the case. There was no direct evidence of the guilt of the defendant. This is conceded by the attorney-general and could not be denied. Our opinion of the nature and force of the indirect or circumstantial evidence will be briefly stated hereafter. If the instruction had been that, if the defendant had *fabricated*, or, as it is sometimes significantly expressed, "trumped up," the defense of an *alibi*, knowing that it was false, it might be correct to state that this would be a circumstance of weight against the defendant, but even then not conclusive of his guilt. But if evidence of this kind is offered in good faith, and the witness or witnesses relied on by the defendant to establish the *alibi*, do not know or have forgotten the fact requisite to establish it, ought such a failure to be stated to the jury as a circumstance of "*great weight* against the prisoner," and as "an *implied admission* on his part of *the truth and relevancy of the facts alleged*" against him by the State?

It is for the State to prove the defendant's guilt, not for the defendant to establish his innocence. Let it be granted, for the argument, that the defendant failed satisfactorily to

show that he was at his own house at the time of the robbery. The instruction of the court does not fall far, if at all, short of directing the jury that this failure, or unsuccessful attempt, an is " admission of the truth and relevancy of the facts alleged" by the State; that is, in short, such failure is an admission by him of his guilt. The stern practical lesson which this rule would teach an accused person would be, " Don't try to prove that you were not at the house when the offense was committed, for if the jury find that you are unsuccessful, this will be an admission of your guilt, or that the circumstances which are alleged to point to your guilt are both relevant and true."

The instruction under consideration was founded upon a passage in Wills (Cir. Ev., 83, quoted without comment, Burrill, Id., 519), where he observes that " an unsuccessful attempt to establish an *alibi* is always a circumstance of great weight against a prisoner, because the resort to that kind of evidence implies an admission of the truth and relevancy of the facts alleged, and the correctness of the inference drawn from them, if they remain uncontradicted."

If this is the law in any case, it must be limited to cases where the *alibi* has been forged or concerted, and is resorted to fraudulently. In such cases, if exposed, it would be, as above observed, a damaging circumstance to the defendant. But the *reason* given by Mr. Wills is improper to be stated to the jury, especially in a case like the one before us, where there was no certain evidence connecting the accused with the commission of the crime. We think it wrong to state to the jury that the effect of a failure to establish an *alibi* is to admit that the facts deposed to by the State's witnesses are *true* as well as *relevant*. Whether *true* or not is for the jury to determine upon other considerations, and not upon any such supposed admission. If Mr. Wills' work were all of this character, and such

were to be the practical application of its teachings, it would justly deserve the severe criticism of Chancellor WALWORTH. *The People* v. *Videto*, 1 Park. Cr., 603, 606.

III. At the instance of the State, the court gave the following instruction: "If you are satisfied from the evidence that the defendant (Collins) believed Huntley to be innocent, and yet for the purpose of diverting suspicion from himself, endeavored to cast suspicion upon Huntley, a strong presumption arises of the defendant's guilt."

Under the circumstances of the case this was erroneous— too strongly stated. A detective from Chicago made an examination of the safe, office, &c., and charged Collins with the crime, and public sentiment seems to have been directed to him as the guilty person. The manner in which it was claimed that the defendant had cast suspicion upon Huntley, was his statements after the detective left, in a communication intended for publication, and perhaps in statements to others, to the effect that Huntley did not lose the amount of bonds he had previously stated he had; that he had made a memorandum of Mr. Huntley's accounts with the different funds; that he was short, and the accounts so showed ; that these were facts and the public ought to be put in possession of them, &c., but disclaimed any intention of throwing any suspicion on Mr. Huntley. Huntley admitted on this trial, that in his statement published after the loss, he had, by mistake, overstated the amount of bonds lost by $1,100. It appears that in a day or two after the detective had left, Collins and Huntley had an interview, in which Collins called the attention of the latter to this overstatement. The latter complained that Collins had not told him before, to which Collins then responded in substance, that he did not know what object Huntley had in view, or that he did not know but he had an object in view in making the overstatement of the loss. Collins

then charged Huntley with being short, that he could not pay the county and his depositors. To this Huntley remarked that he had been spending considerable money, but he had sold his house and could pay all up.

In other words, there is no evidence showing that Collins endeavored to cast any suspicion upon Huntley, by stating any *untruths* respecting him, or by directly charging Huntley himself with the robbery. Under these circumstances, we repeat that the instruction gave too much weight and force to the conduct of Collins. It was not correct to state to the jury that Collins' conduct in this respect would raise a "*strong presumption* of his guilt."

IV. At the instance of the State the court instructed as follows: "All evidence is, more or less, circumstantial, the difference being in the degree, and it is sufficient for the purpose when it excludes disbelief, that is, *actual* and not *technical* disbelief; for he who is to pass on the question is not at liberty to disbelieve as a juror, while he believes as a man. It is enough that his conscience is clear."

This is an isolated extract from an opinion by Chief Justice GIBSON, in *The Commonwealth* v. *Harman*, 4 Barr (Pa.), 269. The forcible expression is characteristic of that distinguished jurist. The opinion from which it is taken discusses at length the nature of circumstantial evidence, and the *quantum* of proof requisite in criminal cases to justify a conviction. In the opinion in which it occurs the above extract would not mislead the jury. But the detached fragment embodied in the instruction above quoted, we cannot but believe to be of dangerous tendency; particularly the expression that a person "is not at liberty to disbelieve as a juror, while he believes as a man." We all believe facts as men, when we would not believe them and act upon them as jurors. The idea sought to be conveyed is, that a juror is not an artificial

The State of Iowa v. Collins.

being, whose judgment is to be governed by technical and artificial rules, but that he is a man, and should, while acting as a juror, act as a man, exercising his reason, his intelligence, his every day judgment and his common sense. In this sense, the proposition that, if one believes · as a man he should also believe as a juror, is correct, provided that belief be founded upon and produced by the evidence in the case, and by nothing else, and is so strong, clear and satisfactory as to exclude all reasonable doubt.

If the guilt of the defendant had been fully and undeniably established, if the verdict upon the evidence were satisfactory, we might not have interfered with the judgment in consequence of the giving of the instruction under consideration.

The instruction, as given, was, without explanation, calculated to mislead the jury.

V. Another error assigned is, that the verdict was against the evidence, and that the court erred in not sustaining the defendant's motion for a new trial.

6. NEW TRIAL: verdict against evidence.

We will cautiously interfere with verdicts when this is the ground. The rules which govern us in this respect have been frequently declared. *The State* v. *Tomlinson*, 11 Iowa, 401; *The State* v. *Johnson*, 19 Iowa, 229.

We recognize the fact that the jury and the court below see the witnesses face to face, the instruments and the physical evidences of the crime, &c., while we see the case, as it were, "through a glass darkly." And yet it is our duty in some cases to interfere. Removed, as we are, from the heat and excitement of the trial, and, in cases where it exists, from the powerful and all-controlling influence of popular opinion and local prejudice, this is a power which it is sometimes absolutely necessary should be prudently exercised. The court below very correctly instructed the jury, at the defendant's instance, that the circumstantial

evidence must not only be inconsistent with the prisoner's innocence, but absolutely inconsistent with any other hypothesis than that of his guilt. We have examined the evidence in concert. There is no direct evidence against the defendant.

And judging from the record before us, and wishing to avoid any expression which would prejudice the case of the State on the retrial, we deem it a marvel how the jury could say that the circumstances proved could not be true, and yet the defendant be reasonably considered as innocent.

Reversed and remanded.