MURPHY v. THE C., R. I. & P. R. R. Co.

| | |
|---|---|
| 38 | 539 |
| 80 | 464 |
| 38 | 539 |
| 84 | 74 |
| 38 | 539 |
| 86 | 617 |
| 38 | 539 |
| 103 | 592 |
| 103 | 654 |
| 38 | 539 |
| f132 | 694 |
| 133 | 329 |
| 38 | 539 |
| 139 | 715 |

I. PER COLE, J., MILLER, CH. J. AND DAY, J. CONCURRING.

1. **Evidence:** RAILROADS: NEGLIGENCE. Where one, walking upon a railway track, was killed by a train, in an action for damages, evidence tending to show whether or not the deceased was a trespasser upon the track was properly admitted, to aid the jury in determining the measure of care required by defendant, and the ultimate fact of negligence.

2. **Ordinary Diligence:** WHAT IS. Ordinary diligence is no fixed and unalterable standard of care; it is always to be determined by the facts and circumstances of each case, and when the circumstances are such as to indicate increased peril, it would require greater watchfulness to constitute ordinary care than under circumstances of less peril.

3. **Practice:** INSTRUCTIONS: UNSUPPORTED BY EVIDENCE. Instructions based upon a hypothesis without support in the evidence are erroneous.

4. **Railroads:** CONTRIBUTORY NEGLIGENCE: INSTRUCTIONS. In an action to recover for injuries resulting in death, an instruction which leaves wholly out of view the question of contributory negligence by the deceased; and under which the jury would be bound to find for the plaintiff, although they might also find that the deceased by his negligence contributed directly to the accident, is erroneous.

5. **Practice:** APPEAL: INSTRUCTIONS. The Supreme Court severely reprehends the practice of giving numerous instructions asked for by counsel, without condensation and simplification by the court, as tending to embarrass and mislead the jury.

II. PER BECK, J., DISSENTING.

6. **Railroads:** RIGHTS OF PEDESTRIANS. License to the public to walk upon the track of a railway may be inferred from long use, without objection by the company; and the latter is held to the exercise of its rights under restrictions that will secure their safety. Its relief from this obligation is to forbid such use.

7. ————: ————. A pedestrian upon a railway track is not bound to the exercise of such increased care as would be required if the company were not held to the use of its road in a manner consistent with his safety.

8. **Practice:** APPEAL: INSTRUCTIONS. Objection to an instruction on the ground of irrelevancy cannot be urged by the party whose instructions, asked and given, embraced the subject matter objected to.

9. **Railroads:** NEGLIGENCE. The plaintiff may recover, notwithstanding his own negligence exposed him to the injury, if the defendant, after becoming aware of plaintiff's danger, failed to use ordinary care to avoid injuring him.

*Appeal from Polk Circuit Court.*

TUESDAY, JUNE 16.

THIS action is brought to recover damages for the death of John Murphy, alleged by plaintiff to have been caused by the negligence of the defendant's employes. The defendant denies the negligence on its part, and alleges that the accident resulting in the death was contributed to and caused by the negligence and carelessness of the deceased. There was a jury trial, with verdict and judgment for three thousand dollars for plaintiff. The defendant appeals.

*Withrow, Gatch & Wright,* for appellant.

*Seward Smith* and *John Gibbons,* for appellee.

COLE, J.—The facts of this case are very few, and are free from complication; and the evidence establishing them is almost without conflict. To enable the reader to understand fully the case as made by the evidence, the *locus in quo,* as it is shown by the surveyor's plat before us, should be described. The track of the defendant's railroad through the city of Des Moines, where the accident happened, runs substantially east and west. The line of the Des Moines Valley railroad is upon Market street, from Tenth street west; the former residence of the deceased being at the corner of Market and Tenth, fronting on Market street. Just before reaching Tenth street the line of defendant's road takes a diagonal course from Market to Vine, which is the next street north, and strikes it, after passing through two blocks, at the corner of Eighth street and Vine; and it crosses the lot whereon deceased resided, near midway of it and just at the rear of his residence. From Eighth street to Fifth, Vine street and the half block of lots on the north side of it, are occupied by defendant for freight and car depot grounds, warehouses, water tanks, and engine house. As this depot ground is approached from the east the grade is descending, and the track is upon an embankment which is ten to twelve feet high in the rear of the residence of

the deceased, and is gradually less till it reaches Eighth street, where there is none—the track there being on a level with the ground around. This track, immediately east of the freight depot, etc., had been used ever since the road was built for the purpose of switching cars upon the different tracks of the depot grounds. The manner of doing it was to run the cars east and up the grade by means of an engine, and hold them there by use of the brakes till the engine started upon its return, and then, by easing the brakes, allow the cars to descend the grade west, and by means of the different switches they were placed upon the desired tracks. It is sometimes called a running or a drop switch.

On the afternoon of June 6, 1871, the deceased, in company with one Wm. Ragan, started to town, going west from the residence of the deceased. As they came out of the house they went up the embankment and on to the track of the defendant, walking between the rails, and had walked five or six rods, when they met an engine and car passing up the grade, and stepped out of the way for them to pass, and then stepped back inside the rails, and probably walked from one to two hundred feet, when they heard the engine coming and stepped out of the way again. " After the engine passed, Murphy walked sometimes on the outside of the track—probably as far as across this room, thirty-five or forty feet, and then stepped up on the ties and took two or three steps—during which time I heard a voice from the top of the car telling some one to look out, and this was not over a minute, I should think, before the car struck him—and he was in the act of stepping upon the track again at the time the accident occurred. It could not have been over a minute after I heard the voice before the car struck him; for, as soon as he turned his head to look back, the car bumped him right down. When I heard the voice I think Murphy was just in the act of stepping inside of the track; he was right on the end of the ties. Just before he got struck, he was walking on the outside of the rails on the ties, and about the time I heard the voice, he was in the act of stepping across the rail on the track, and it was something like about a minute after I heard the voice before the car came on to him.

I saw the car strike him and saw the movements he made after the car struck him, from the north side of the track where I was. I saw him roll down the embankment after being thrown forward a tie or two. He didn't stop when he was thrown forward, but rolled on down the bank. I saw this under the car. After the car passed I didn't look and notice whether there was a man on the car or not. I heard the voice—it said 'look out.' I went around and picked Murphy up, and asked him if he was hurt. He said, 'guess not much.' But afterwards, when I straightened him up, he said he 'was hurt a good deal, and that he was always afraid of that place since the road was built, and had got caught at last.' The embankment at the point where we got on was ten or fifteen feet high, but not so high at the point where he was struck. Murphy's house is right between the two railroads." This is the exact language of Wm. Ragan who is the plaintiff's first and principal witness. We copy it, because it is a very intelligent account of the time, place and manner of the accident. Murphy died in a few hours after receiving the injury. It is further shown that Murphy had often used this embankment as a footway, and that many others had also used it, more or less; that this use was known, to some extent, by the defendant's employes, and that the embankment was narrow, so that walking outside of the rails was not convenient.

In the progress of the trial, the plaintiff was permitted, against defendant's objections, to ask witnesses whether the deceased and the neighbors in that vicinity and the public generally, were in the habit of using the track between Murphy's house and the depot, including the place where the accident happened, as a footway; and, also, whether the employes of the defendant were about there when the track was so used. These various questions were answered in the affirmative, and thereon, the court, at the instance of the plaintiff, gave the following, and other kindred instructions: "If you find from the evidence that the deceased had for a considerable time prior to the accident, been accustomed to walk over and upon the track of the railroad company, at and near the place where the accident occurred, by

1. EVIDENCE: railroads: negligence.

the acquiescence of the company, then the deceased was not a trespasser upon the track, and such permission may be implied if deceased was long in the habit of so walking over the track, with the knowledge of the company, or its employes in charge of that part of the road, without objection on their part—and it is for you to determine from all the facts in evidence before you whether or not the deceased had such implied permission." The defendant duly excepted to this evidence and these instructions, and now assigns errors thereon.

In our view there was no error in these rulings by the circuit court. If the deceased was a trespasser upon the track of the defendant, this fact would not excuse the killing, if it was the result of negligence by the defendant's employes and without negligence by the deceased. Nor, if the deceased was upon the track by the permission of the defendant, would it be liable for the death, unless it was caused by the like negligence of the employes of defendant. The only effect either fact could have in the determination of the case by the jury, would be upon the facts constituting the measure of diligence required. In either case the measure would be ordinary diligence. But the facts which would be sufficient to constitute ordinary diligence as against a trespasser, might not establish ordinary diligence as against a person properly there by permission. In other words, ordinary care would stimulate to greater watchfulness against injury to persons who might lawfully be upon the track, than it would if no person could lawfully be there, and this, because every person may presume that every other person will obey the law. Ordinary diligence is no fixed and unalterable standard of care. It is always to be determined by the facts and circumstances of each particular case; and is as variable as the cases. To run an engine, with great speed, through a street crowded with people, would be gross negligence, but to run it with that speed in the country, upon a fenced track, with no crossings, would be ordinary care.

So, on the other hand, if the deceased had knowledge of the manner in which the defendant used the track at that place, which could hardly be doubted under the facts proved, it would

require greater watchfulness by him to constitute ordinary care on his part than if the track was not thus used. From these views it is sufficiently manifest that the circuit court did not err in admitting the evidence complained of, because it tended to establish facts proper for the consideration of the jury in finding the ultimate fact of ordinary care; and the instructions were proper in directing the attention of the jury to such facts. The same would also be true as to the evidence respecting the condition of the alley and of the railroad crossing in it.

II. The eighteenth instruction given by the court, at the instance of plaintiff, is as follows: "If you find from the evidence that the deceased was upon a public alley where the railroad crosses it at the time the car struck him and inflicted the injury from which he died, then the court instructs you that at such place he had a right to be without permission of the railroad company, etc.," * * * Each party introduced a plat of *locus in quo*, and by both plats it clearly appeared that the injury did not occur at the alley crossing. The testimony of all the witnesses also established this fact, and there was no conflict thereon. For this reason, if for no other, the giving of the part of the instruction above quoted was error, and it would tend to mislead the jury. The twenty-fourth instruction given is erroneous for the same reason.

3. PRACTICE: instructions.

III. The court, at the plaintiff's request, also gave this instruction: 8. "If you find from the evidence that the employes of the railroad company in charge of the car in question, saw the deceased on the railroad, when the car was approaching him, and that they could, by the use of reasonable care and prudence, have avoided the accident, either by slacking the speed or stopping the car, or by other reasonable means, and failed to do so, and that the accident occurred from such failure on their part, then you will find for the plaintiff." This instruction is clearly erroneous, and for this if for no other reason: It leaves wholly out of view the question of contributory negligence by the deceased; and under it the jury would be bound to find for

4. RAILROADS: contributory negligence.

the plaintiff, although they might also find that the deceased, by his negligence, contributed directly to the accident. There was no other instruction given which would tend to cure this error. The twentieth instruction given is also liable to the same objection, and so is the latter part of the nineteenth.

IV.   At the instance of the defendant, the court gave to the jury this instruction: "If the jury believe from the evidence that defendant was in the custom of handling its trains and switching its cars in the manner alleged by plaintiff, and that deceased was aware of and familiar with this habit and custom, and that he went upon defendant's railway knowing of this custom, and when struck by defendant's car was walking along defendant's private right of way, then you are instructed that deceased was there at his own peril, and bound to exercise the utmost care and prudence; and if you find from the evidence that, while walking on defendant's track, he met an engine and car passing up the grade and afterwards saw the engine pass back without the car, and that he continued, after this happened, in such proximity to the track as to be in reach of a car moving along the track without looking to see whether a car was approaching, and that by looking he could have seen the approach of such car, then such acts on his part, taken in connection with his knowledge of defendant's custom, would be negligence on his part; and in determining his knowledge of such custom, you may consider his residence in proximity to the track, his declarations proved on this trial, and any other fact tending to show such knowledge."

It is now insisted that the verdict is contrary to the evidence and this instruction.   Since the judgment must be reversed upon other grounds, it may perhaps be as well to pass this question without discussion; and yet it may not be improper to quote, as expressive of our views here, the language of a former Chief Justice of this court in concluding the opinion in the case of *The State v. Collins*, 20 Iowa, 85, that "judging from the record before us, and wishing to avoid any expression which would prejudice the plaintiff's case on a re-trial, we deem it a marvel how the jury could say that the" facts stated in the instruction were not fully proved.

VOL. XXXVIII.—35

We have not reviewed the instructions *seriatim*. Indeed we could not, for there are forty-four in all—twenty-seven were given on the request of the plaintiff, and seventeen on the request of the defendant, and they cover eighteen closely printed pages of the abstract. Each class, about equally, evinces the bias and coloring of the interest which produced it. If the jury were not confused and misled by them, another marvel would be added to this case. They should have been subjected to the mental alembic of the judge, and materially reduced and purified, and moulded to the facts of the case. The practice of giving so many instructions is a serious evil, and it often tends to defeat justice and the right, and always imperils them.

*5. PRACTICE: appeal: instruction.*

REVERSED.

BECK, J., *dissenting.*—I am unable to concur in the foregoing opinion, and will briefly present the grounds of my dissent.

I. License to use the track of a railroad by footmen unquestionably may be inferred from acquiescence in long use in that way by the public, with the knowledge of the corporation operating the cars used thereon. Evidence of this character is sufficient in this State to establish the existence of a way by prescription or dedication. *Onstott & Edwards v. Murray*, 22 Iowa, 457. Such evidence will certainly support a presumption that the use in the case under consideration was with permission of the defendant. *Donaldson v. The M. & M. R. R. Co.*, 18 Iowa, 280; *Evans v. The B. & M. R. R. Co.*, 21 Iowa, 374.

*6. RAILROADS: rights of pedestrians.*

If the deceased was upon the railroad track with permission of defendant, he cannot be regarded as a trespasser, and defendant was bound to exercise its right in using the track with a view to the safety of deceased and others who, acting upon the permission given them, were in the habit of using the track as a foot path. If defendant did not intend to use proper care for the safety of such persons, it was required to forbid such use, and take proper steps to notify all concerned. Humanity demands such a course. It would neither be

oppressive nor unreasonable. If defendant's business is of such a character that it cannot permit persons to walk upon its track, and use proper care for their safety, no one can complain, if forbidden to do so. It is simply the exercise of the right of the owner in the use of his property. While permitting the use of its track by pedestrians, defendant must be held to the exercise of its rights under restrictions that will secure their safety. *Kay v. Pa. C R. R. Co.*, 65 Penn. St., 269; S. C. 3 Am. R., 628.

These views are applicable to the first point discussed in the foregoing opinion. While I agree with the conclusion reached, I think it is better supported upon the reasons above presented.

II. The last paragraph of the first point of the opinion, in my judgment, announces a doctrine that is unsound.

If defendant was required to use its track at the place where the accident occurred, in a manner consistent with the safety of footmen permitted to go upon it, I do not think the law requires increased care on the part of such persons to avoid accidents which might result from defendant's manner of using the road inconsistent with safety of pedestrians. That is, the deceased was not bound to use such degree of care as would be required in order to avoid the accident, if it resulted from defendant's unlawful use of the road. And such use would be unlawful if it was not consistent with the safety of footmen, on the track under defendant's permission. The deceased was authorized to rely upon defendant performing its lawful duty and was not required to exercise diligence or care with a view that such duty would be neglected.

III. The second point of the opinion involves certain instructions in regard to the care defendant was bound to exercise at the crossings of streets and alleys used by the public. It is not claimed that they are wrong in principle, but it is insisted that they are inapplicable to the facts proved, and are based upon a hypothetical case which was clearly negatived by the evidence. In other words, that the evidence shows the accident happened at a point not on the alley or street. There is no contest in the proof as to the fact that the place where

deceased *fell* was not in the alley. It was very near thereto, the distance but a few feet in the direction decedent was walking. There is evidence tending to show that the deceased walked a short distance, a step or two, before he fell after being struck, and that the precise point where he came to the ground was not on the embankment. This evidence, together with the height of the embankment, considered in connection with the momentum imparted to deceased by the car, certainly tended

8. PRACTICE: appeal: instruction. to show that deceased was struck at the alley. It cannot be said that there was *no* evidence upon this point. The instructions, therefore, were not irrelevant. But should we conclude that there was an utter absence of evidence to support the view that deceased was struck at the alley, defendant cannot be permitted to object now to the instruction in question on the ground of irrelevancy, for the reason that instructions asked and given in its behalf contemplated a conflict of evidence on this point and submitted the determination thereof to the jury. The court could well consider the point of fact a disputed one, when it was so regarded by defendant, and the judgment cannot be reversed for an error into which the court was led by appellant. *Smith v. S. C. & P. R. Co.*, p. 173, *ante*. The defendant may complain of the jury's finding of fact under this instruction, but not of the instruction itself.

IV. The third point in my opinion is also based upon a misunderstanding of the record.

The rule of contributory negligence was clearly and explicitly given in several separate instructions asked by plaintiff, and in the 10, 12 and 14, asked by defendant, and probably in others. Those asked by defendant present the rule as fully and clearly as it can be stated, and without connection with any other principle that might lead to a misunderstanding on the part of the jury. They seem to have been drawn by defendant's counsel, for the purpose of presenting the rule clearly to the jury, and in my judgment that object was fully attained.

But the rule of the instruction condemned in the opinion is

9. RAILROADS: negligence. an exception to the doctrine of contributory negligence, and therefore the jury could not have been

misled, even though they had no instructions as to that doctrine. It is now the settled English rule, which is adopted generally in this country, that "the plaintiff may recover, notwithstanding his own negligence exposed him to the injury, if the defendant, after becoming aware of the plaintiff's danger, failed to use ordinary care to avoid injuring him." Shearman & Redfield on Negligence, §§ 25, 26, 36; Sanders on Negligence, pp. 55–6. The instruction is to the effect that if defendant's employes saw deceased on the track when the car was approaching him, knew of his danger and could, by the exercise of reasonable care and prudence, have avoided the danger and the accident occurred from such failure on their part, the defendant is liable; and the court might have added, even though the deceased was negligent.

The rule of the instruction, regarding it as contemplating the negligence of the deceased, is approved by christianity, humanity and common sense, whose principles my judicial duties by no means require me to ignore. It was pertinent to the facts of the case, and was therefore properly given to the jury.

V. I do not think the remarks in the fourth paragraph are justified by the record, for I believe that the verdict is well supported by the evidence, and is not in conflict with the instructions, taken as a whole. The instruction quoted in this paragraph is clearly erroneous, in that certain acts of deceased are declared as a matter of law to be negligence. The negligence of deceased was a matter for the jury to determine, and not for the court; other defects could be pointed out.

In my opinion the verdict under the instruction referred to in the preceding paragraph, could not have been for defendant, certainly it is not without the support of evidence, and in no other case can it be disturbed.

My convictions are clear and positive that the judgment in this case ought to be affirmed.