R. H. BATTS, doing business as Batts Cab Company, Plaintiff in Error,

v.

Fanny Vernell CARTER, Defendant in Error.

No. 3755.

Supreme Court of Oklahoma.

June 4, 1957.

Steele & Boatman, Okmulgee, for plaintiff in error.

Bailey & Pitchford, Okmulgee, for defendant in error.

DAVISON, Justice.

This action was commenced in the district court of Okmulgee County by Fanny Vernell Carter against Casualty Reciprocal Exchange, an Insurance Corporation, R. H. Batts, d/b/a Batts Cab Company, and Lincoln Edwards to recover damages for personal injury sustained by plaintiff while riding, as a fare-paying passenger, in defendant, Batts', taxicab. On proper motion, Casualty Reciprocal Exchange was eliminated from the case under the authority of the case of Subscribers at Casualty Reciprocal Exchange v. Sims, Okl., 293 P.2d 578 which case was decided while the present case was pending. Lincoln Edwards was never served. Verdict and Judgment were for plaintiff below and the defendant has appealed from the order overruling motion for new trial. The parties will be referred to as they appeared in the trial court.

The plaintiff's theory of the case was that she was a fare-paying passenger and that the defendant company was a common carrier for hire and owed her the duty to exercise a very high degree of diligence for her safety.

The principal theory of defendant was that the driver of the taxi had departed from his duties as agent and employer of defendant, and was not acting in the scope of his employment at the time of the wreck; that the driver of the taxi and plaintiff were on a joint mission of their own.

Defendant, for reversal, relies on four assignments of error.

██ It is first argued that the court erred in not discharging the jury after averring that plaintiff injected in the case the fact that the defendant was insured by the Casualty Reciprocal Exchange. This argument is based on the following circumstances:

1. That while the case was pending and before the insurance company was eliminated from the case, the style of the case was published in the local papers naming the insurance company as the first party defendant.

2. That the dockets were printed by the clerk showing the insurance company as a defendant and that when the docket was called by the clerk the first time the case named the insurance company as a defendant.

Under the existent circumstances we do not think the court was in error in not discharging the jury. The record discloses that after the case was first called by the clerk, upon being admonished by the court, the clerk thereafter, in sounding the docket referred to the case as Carter v. Batts. The trial court made a finding on this issue, as follows:

"The Court overrules the motion, for the reason that he does not find that a copy of the Trial Docket is in the possession of any juror; and no showing is made that any juror read any press notice of the cause assigned for trial. * * *"

██ The record does not show any prejudice by the alleged injection of the question of the insurance of the defendant. The fundamental and controlling question in such a case is whether the reference to insurance has prevented defendant from having a fair trial of the issues. Berry v. Park, 185 Okl. 118, 90 P.2d 425.

██ It is next argued by defendant that the trial court erred in overruling and denying the motion for a directed verdict. Defendant cites a number of cases in support of this argument, most of the cases pertaining to an agent who has departed from the employment of the master and entered on a mission of his own.

In discussing this phase of the case we will have to review a part of the evidence.

Plaintiff testified that she lived about two miles northeast of Okmulgee. That she left her house about 12:30 P.M. and walked over to her aunt's, some distance away, to pick up the mail. That her aunt lived next door to Geraldine Jones and that about 2:00 P.M. she talked with Geraldine in her front yard. That after talking to Geraldine for a while she started across the street to call a cab. That just before she started across the street Lincoln Edwards (defendants driver) came by with a passenger in his taxi (Batts Cab Company). That plaintiff "hollowed" at Lincoln Edwards who stated that he would be back after her. That she had ridden as a passenger of Edwards several different times but had never had a date with him. That Edwards came back for her about 4:00 P.M. and that she got in the front seat with him. That she gave him her address and told him she wanted to go home. That he stopped to deliver a package to his house which was just around the corner. That they then went to the house of Katie Kennedy where they stayed for about ten minutes, during which time the plaintiff sat in the living room while Edwards went to the kitchen. That the driver told her before she got in the taxi that he had to pick up two girls at defendant's cab stand. That the driver went to the cab stand which was a little

after 4:00 P.M., but the girls had gone. That they next went to the home of Betty Lewis who lived about a block from the cab stand. That the driver went in the Lewis house and that soon thereafter she followed him in the house and asked the driver to take her home. They were there about 15 or 20 minutes and witness drank a bottle of pop there. That after leaving this house the driver drove to Mary Bond's house and he went in and witness waited for him in the car. That he stayed so long that plaintiff went in after him and after a few minutes Edwards started to take witness home and on the way home "he hit a bump or something, and didn't straighten up and he ran into a tree." That the taxi was wrecked and caused severe injuries and disfigurement to witness.

The testimony of defendant that while Lincoln Edwards was his driver and worked for him every day, including the day of the accident, the drivers of his cars were given instructions to report every 15 to 30 minutes. That witness, on cross-examination stated that when Edwards did not report back on the day of the accident, that such actions were not uncommon and that he did not take positive action to locate him until about 4:30 when Edwards called in. That no driver was ever fired for not reporting in to the taxi stand.

The defendant attempted to inject evidence to show that plaintiff and the driver were both drinking on the afternoon in question. The evidence on this point was very meager, if any, and the record does not show that plaintiff was drinking.

Defendant was a common carrier and the testimony of plaintiff, if believed, shows that she was a passenger for hire in the taxicab of defendant. We are of the opinion that there was sufficient evidence that the plaintiff was a passenger of defendant and that whether the wreck occurred while she was being taken to her home was a question of fact for the jury.

The trial court did not err in overruling the demurrer to the evidence and in refusing to direct a verdict for defendant.

The trial court properly instructed the jury that unless it found by a fair preponderance of the evidence that the driver of the taxi was acting as the agent of the defendant and in the scope of his authority as such agent, at the times involved, they should render a verdict for defendant.

It is next argued that the court erred when in the statement of the case prior to the instructions he referred to plaintiff as seeking a recovery of $1,000 for future medical expenses. This was in the petition and the statement of the court was in the review of the allegations of the petition. There was no request made to strike this statement. Defendant offered no evidence to contradict the evidence of disability submitted by the plaintiff. No instruction was requested on the question of future damages. The total amount recovered was $5,000, well below the amount asked for actual damages, exclusive of any medical expenses. We find that the mention in the statement of the case of the amount asked for future medical expenses did not constitute prejudicial error. The remaining objections are to two instructions regarding negligence. The first instruction, No. 5, is to the effect that the violation of a city ordinance is negligence per se. The second instruction, No. 10, refers to the rules of the road contained in the Statutes of Oklahoma. The chief argument in this objection is that these instructions may conflict. The negligence of Lincoln Edwards was established almost without any objection of the defendant to the line of testimony offered. Defendant offered its testimony to support its chief argument that plaintiff and the driver, Lincoln Edwards, were on a venture of their own. There is no showing that the jury was misled by either instruction. It is a cardinal rule that error will not be presumed but it is the duty of the complaining party to show in what respect he was harmed by the error. Linson v. Spaulding, 23 Okl. 254, 108 P. 747; Hutchison v. Brown, 66 Okl. 250, 167 P. 624.

We have examined the instructions and find there was no prejudicial error in giv-

ing them. The amount of the verdict was not questioned and we, find nothing in the record prejudicial to the rights of the defendant.

Judgment affirmed.