BARSLAND, INC., A NEVADA CORPORATION, APPELLANT, v. RUTH L. SHAW, RESPONDENT.

No. 5157

January 30, 1967                    422 P.2d 1003

*Vargas, Dillon, Bartlett & Dixon,* and *Melvin Brunetti,* of Reno, for Appellant.

*Hawkins, Rhodes & Hawkins* and *A. D. Jensen,* of Reno, for Respondent.

**OPINION**

By the Court, THOMPSON, C. J.:

This is an action to recover damages for breach of a management contract. Ruth Shaw, plaintiff, claims that the contract was terminated without cause by Barsland, Inc., defendant. The case was tried to a jury. It favored Shaw with a verdict and fixed her damages at $18,900. Judgment was entered upon the verdict. This appeal by Barsland challenges the sufficiency of the evidence to support the trial result, and certain evidentiary rulings. It is our opinion that the challenges are unsound. Therefore, we affirm the judgment.

1. On January 9, 1963, Shaw and Barsland signed escrow instructions to Pioneer Title Insurance Company which, if performed, would accomplish a transfer of ownership of Shangri La Guest House, Reno, Nevada, from Shaw to Barsland. The purchase price was $110,000; $50,000 down, and payment of the $60,000 balance to be evidenced by a promissory note in that amount, secured by a trust deed, and payable

$30,000, or more, plus 6 percent interest one year later, and $30,000, or more, plus 6 percent interest two years later. The down payment was made, and the note and security instrument were duly executed.

Later that same day the parties entered into a management contract by which Barsland agreed to employ Shaw as manager of Shangri La for the term of 5 years at a salary of $350 per month. Among other provisions, the contract stated: "Barsland may terminate Shaw's employment for good cause on 30 days' written notice. If Barsland desires to terminate this employment contract without cause, it may do so at any time by paying to Shaw a sum equal to $350 per month for the then remainder of the term of employment hereunder. The obligations of Barsland under this contract shall not be terminated by a sale or other disposition of the Shangri La property and, in such event, Barsland shall be obligated to terminate this contract in accordance with the provisions of this paragraph."

Relying upon the quoted proviso, Shaw commenced suit, contending that her employment was terminated without cause. Barsland answered, asserting that it had cause to terminate, pleaded the affirmative defense of fraud, and counterclaimed, seeking to rescind the sale and the management contracts. Barsland also urged that the sale and management contracts were later modified and, as modified, were fully performed and the parties discharged from further liability. This latter contention is again pressed on appeal, Barsland conceding that the jury could permissibly find for Shaw on all other issues raised in defense. Our inquiry, then, is whether the evidence will support the jury's conclusion that the management contract was not later modified. In resolving this inquiry we are obliged to assume that the jury believed the evidence most favorable to Shaw. On that assumption, the evidence to sustain the verdict is ample. We need not recite all of it. A brief statement will suffice.

In October 1963 Barsland informed Shaw that she had failed to properly perform her duties as manager. Negotiations followed. Later that month Barsland paid off the balance due on the escrow contract of sale, and then notified Shaw that her management contract was terminated for cause. The premature pay-off of the sale contract and termination notice of the management contract are pointed to by Barsland as conclusive

evidence of a meeting of the minds that the original agreements were modified and canceled. On the other hand, Shaw directs our attention to the fact that, during the October discussions, nothing was said about terminating her management contract; that an accelerated payment of the balance of the purchase price was permitted under the escrow contract of sale and was not, therefore, inconsistent with the terms of that contract; that the termination notice, which Barsland gave after paying the balance due on the sale contract, was an acknowledgment that the management contract was still in existence and expressly fixed her damages should Barsland terminate it without cause. Clearly, the jury could accept Shaw's view of the meaning to be given the premature pay-off and termination notice, find that the management contract was not modified and grant her a recovery in damages for breach of the management contract. The jury's factual determination finds support in the evidence and may not be disturbed by this court.

2.    Barsland, Inc. was wholly owned by Frederick Barton, a man of extensive business experience and the owner of many business enterprises. During trial, over objection, searching inquiry was made into his wide business activity and background. That inquiry also suggested that Barton was a man of wealth. Counsel for Barton argues that the disclosure was prejudicial. The court correctly allowed that evidence to come in, for it possessed relevance to the affirmative defense of fraud. Information disclosing a disparity between litigants in business activity and background may aid in resolving the charge of fraud. Puget Sound National Bank v. McMahon, 330 P.2d 559 (Wash. 1958). Indeed, a charge of fraud permits a greater latitude of inquiry. Simpson v. Harris, 21 Nev. 353 (1893); Robt. Pierce Co. v. Sherman Gardens, 82 Nev. 395, 419 P.2d 781 (1966).

Evidence was also received concerning Barton's relationship with a woman guest at Shangri La which, if believed, would suggest that Barton wished to purchase the guest home to please her. Such evidence was properly allowed as having some bearing upon the issue of fraud.

We perceive no error in the trial.

Affirmed.

COLLINS and ZENOFF, JJ., concur.