## THE TRUCKEE–CARSON IRRIGATION DISTRICT, Appellant, *v.* CECIL WYATT, Jr., Respondent.

No. 5419

November 25, 1968 448 P.2d 46

*Richard P. Wait,* of Reno, for Appellant.

*Bradley & Drendel,* of Reno, and *Boccardo, Blum, Lull, Niland, Teerlink & Bell,* of San Jose, California, for Respondent.

## O P I N I O N

By the Court, ZENOFF, J.:

Truckee-Carson Irrigation District, hereinafter referred to as TCID, appeals from a judgment entered in favor of Cecil Wyatt, Jr. The judgment awarded Wyatt damages in the sum of $500,000, based upon a jury verdict awarding damages in that amount. The action grew out of an injury incurred by Wyatt while water skiing at Lake Lahontan in the counties of Churchill and Lyon, Nevada, on July 23, 1964. While water skiing, Wyatt suddenly somersaulted in the air and struck his head thereby sustaining a severe injury and resultant paralysis from the neck down.

Wyatt brought an action to recover damages for this injury from TCID and Joseph Broyles, who owned and was driving the boat when the accident occurred. The trial court granted a motion for a directed verdict in favor of Joseph Broyles. Judgment was entered on the verdict in favor of Wyatt against TCID. TCID appeals.

1. Negligence of TCID is predicated upon its failure to maintain its premises in a reasonably safe condition for use of its business invitees in a manner consistent with the purpose of the invitation and for failure to warn such invitees of known hazards. Lake Lahontan is an artificial lake created by the construction of Lahontan Dam. As the lake was filled it covered a land area on which grew trees and other vegetation. The primary function of the lake was to store water for irrigation purposes, but boating enthusiasts used the lake. This use increased to the extent that TCID imposed certain regulations which required that all boaters secure a permit. A part-time employee was hired to sell the permits and to patrol the lake, checking for boats without valid permits and for boats which were being operated in a reckless and unsafe manner. Prior to Wyatt's accident this employee had advised TCID's Board of Directors that submerged tree trunks constituted a hazard when the water level was lowered during the summer months, although he had not singled out the two stumps which figured importantly in this case. But this same employee had observed the exposure of these same two stumps by the receding water level in the year prior to the accident.

2. But TCID contends that even if it was negligent, the evidence does not establish that Wyatt was injured as a result of any of the described hazards or because of any unsafe condition of the premises. The jury was properly instructed on the issue of proximate cause, and it is clear that they found that the negligence of TCID was the proximate cause of Wyatt's injury.

The evidence presented by Wyatt was to the effect that he, Joseph Broyles and Chris Reyes went water skiing in the early afternoon on July 23, 1964 at Lake Lahontan. They took turns skiing. Wyatt used only one slalom ski. While Wyatt was skiing, Broyles was operating the boat. He pulled out about 500 feet toward the center of the lake and then made a right turn. This caused Wyatt to go to the left of the boat. After the turn, he crossed the wake of the boat and was skiing to the right of the boat. At this time the boat was about 100 feet offshore, due to the variations in the shoreline, and Wyatt's

position was estimated to be 25 to 50 feet from the shore. Wyatt stated that the boat was going about 20 to 25 miles per hour, that the ride was normal, and that he did not lose his balance or fall from the ski. Wyatt stated that as he was skiing he hit something and was sent headfirst into the water. He stated that what he hit felt like a solid object, but that he could not tell exactly what it was. Evidence was presented that he was floating in water, which was about chest deep, and that his companions got out of the boat and floated him to shore and summoned help. The testimony of the event related by his two companions was substantially the same, except that they were not in a position to know what Wyatt struck. They stated that as they observed him he was skiing normally and suddenly hit something and somersaulted through the air, holding on to the tow rope, and went headfirst into the water.

James Vaughn, the TCID patrolman, was called to the scene of the incident. He stated that he observed a small limb and some wood chips floating just offshore. He identified the place on the beach at which he found Wyatt as being opposite a sandy point. A little more than a month later, when the lake level receded, he returned to the general area and noted a tree stump just opposite the point where he had observed the respondent and another tree stump a short distance away. He stated that these were the two tree stumps he had seen the year before. The nature of the injury suffered by respondent indicated a sudden blow on the head as its cause.

TCID claims that the jury could have found proximate causation only as a result of speculation and conjecture. But it is only where the evidence favorable to the party seeking recovery tends equally to sustain either of two inconsistent propositions that neither of them can be said to have been established by legitimate proof. Southern Pacific Co. v. Huyck, 61 Nev. 365, 128 P.2d 849 (1942). If the evidence favorable to Wyatt pointed to two or more possibilities to explain the accident, and if one or more of these conclusions is equally consistent with the nonliability of TCID, then the selection made by the jury as between these possibilities could be said to be based upon mere speculation and conjecture. The jury here might have concluded that Wyatt lost his balance and that he fell or that he came into the beach too fast in dismounting and struck the sand. However, there was direct evidence which raised the probability that the injury was caused by TCID's negligence, and it was the function of the jury to accept or reject this evidence. Barsland, Inc. v. Shaw, 83 Nev. 69, 422

P.2d 1003 (1967). Under these circumstances, its choice cannot be said to be based·upon mere speculation or conjecture. Terminal Taxi Co. v. Flynn, 240 A.2d 881 (Conn. 1968). See also Wolf v. Reynolds Elec. & Eng. Co., 304 F.2d 646 (9th Cir. 1962) (Nev.); Lewis v. Drake, 158 S.E.2d 266 (Ga.App. 1967).

3. TCID also contends that an instruction was erroneously given to the jury.[1] It contends that this instruction constitutes an expression of opinion by the trial judge which is prohibited by NRS 3.230[2] and Nev. Const. art 6, § 12.[3] This instruction may have been merely an instruction by the judge calculated to call the jury's attention to special facts. This is often done when the jury is instructed to consider a child's age in determining its negligence or the short period of time within which to react in an emergency. Instructions cautioning the jury to carefully consider a witness's testimony are often given. Carlson v. State, 84 Nev. 534, 445 P.2d 157 (1968); Crowe v. State, 84 Nev. 358, 441 P.2d 90 (1968).

Assuming arguendo that the instruction was erroneously given, the error is harmless when considered in view of the whole record and the normal predilections of the jurors.

 

A judgment cannot be reversed by reason of an erroneous instruction unless upon a consideration of the entire proceedings it shall appear that such error has resulted in a miscarriage of justice. Prejudice is not presumed. Boyd v. Pernicano, 79 Nev. 356, 385 P.2d 342 (1963); Pfister v. Shelton, 69 Nev. 309, 250 P.2d 239 (1952). See also Eldorado Club, Inc. v. Graff, 78 Nev. 507, 377 P.2d 174 (1962); Lee v. Baker, 77 Nev. 462, 366 P.2d 513 (1961). If the giving of the

---

[1]INSTRUCTION NO. 14:
"Any evidence that has been received of an act, omission, or declaration of a party which is unfavorable to his own interests, should be considered and weighed by you as you would any other admitted evidence, but evidence of the oral admission of a party, other than his own testimony in this trial ought to be viewed by you with caution."

[2]NRS 3.230. *"District judge not to charge juries upon matters of fact.* District judges shall not charge juries upon matters of fact but may state the evidence and declare the law. In stating the evidence, the judge should not comment upon the probability or improbability of its truth nor the credibility thereof. If the judge state the evidence, he must also inform the jury that they are not to be governed by his statement upon matters of fact."

[3]Nev. Const. art. 6, § 12. *"Judges not to charge juries respecting matters of fact; may state testimony and declare law.* Judges shall not charge juries in respect to matters of fact, but may state the testimony and declare the law."

instruction was error, it is harmless because upon considering the entire record, it is not probable that a different result would ensue at a new trial free of the contested instruction. The burden is upon the appellant to show the probability of a different result. Serpa v. Porter, 80 Nev. 60, 389 P.2d 241 (1964); Gordon v. State, 137 So.2d 752 (Ala. 1962); Shelby County v. Baker, 110 So.2d 896 (Ala. 1959); Kyne v. Eustice, 30 Cal.Rptr. 391 (Cal.App. 1963); Edgett v. Fairchild, 314 P.2d 973 (Cal.App. 1957); Casalo v. Claro, 165 A.2d 153 (Conn. 1960); Enix v. Diamond T. Sales & Serv. Co., 188 So.2d 48 (Fla.App. 1966); Carpenter v. Forshee, 120 S.E.2d 786 (Ga. App. 1961); McCray Mem. Hosp. v. Hall, 226 N.E.2d 915 (Ind.App. 1967); Traylor Bros., Inc. v. Alford, 230 N.E.2d 336 (Ind.App. 1967); Osborn v. Lesser, 439 P.2d 395 (Kan. 1968); Miller v. Braun, 411 P.2d 621 (Kan. 1966); McCandless v. Manzella, 369 S.W.2d 188 (Mo. 1963); Apodaca v. United States F. & G. Co., 433 P.2d 86 (N.M. 1967); Scott v. Brown, 416 P.2d 516 (N.M. 1966); Tevis v. McCrary, 402 P.2d 150 (N.M. 1965); Kanoy v. Hinshaw, 160 S.E.2d 296 (N.C. 1968); London v. London, 157 S.E.2d 90 (N.C. 1967); Gregory v. Lynch, 155 S.E.2d 488 (N.C. 1967); Jacobs v. Barefoot Oil Co., 144 S.E.2d 275 (N.C. 1965); Gleson v. Thompson, 154 N.W.2d 780 (N.D. 1967); Zimmer v. Bellon, 153 N.W.2d 757 (N.D. 1967); Plank v. Heirigs, 156 N.W.2d 193 (S.D. 1968); Dwyer v. Christensen, 92 N.W.2d 199 (S.D. 1958); Cook v. Blytheville Canning Co., 359 S.W.2d 828 (Tenn. 1961); Martinez v. H. E. Butt Grocery Co., 379 S.W.2d 94 (Tex. Civ.App. 1964); Hall v. Blackham, 417 P.2d 664 (Utah 1966); Collier v. Nolan, 211 A.2d 265 (Vt. 1965); cf. Trombley v. Jennings, 189 So.2d 516 (Fla.App. 1966); Batts v. Carter, 312 P.2d 472 (Okla. 1957); Baldwin v. State, 223 A.2d 556 (Vt. 1966).

Furthermore, if the requirements of Rule 61 of the Nevada Rules of Civil Procedure are fulfilled, then there was only harmless error. The standard of Rule 61 is pertinent. Eldorado Club, Inc. v. Graff, supra; Lee v. Baker, supra; Serpa v. Porter, supra. It is taken from the Federal Rules of Civil Procedure so its interpretation there should govern here. It is clear that the doctrine of presumed prejudice has been rejected, 7 J. Moore, Federal Practice § 61.02 (2d ed. 1966), and the presumption of integrity of verdicts in civil cases is the rule. Id. at §§ 61.03, 61.11. "He who seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted." Palmer v. Hoffman, 318 U.S. 109,

116 (1943). The record must be considered as a whole. Jiffy Markets Inc. v. Vogel, 340 F.2d 495 (8th Cir. 1965).

The injured Wyatt and his ski-buddies consistently testified that Wyatt was skiing along until he hit "something" under the surface of the water. Vaughn, TCID's caretaker, added that a month later when the water was down considerably he saw tree stumps at the site of the accident previously indicated by the boys. He was able to pinpoint it because it was almost immediately in front of his dwelling at the beach. Therefore they told a plausible story.

TCID in defense attempted to prove its case by impeaching Wyatt's witnesses and by arguing that the jury should believe that Wyatt had hit the sand on the beach because hospital records prepared by a doctor, an admitting clerk and a nurse reflected that Wyatt had said that he was injured in a water skiing accident when he went toward the beach to end his skiing.

Neither the doctor nor the two women exactly recalled Wyatt's statements after the accident nor did Wyatt or his companions know what he hit. Wyatt and his companions did say that he was not heading into the beach for a "whip" landing. Wyatt did not have any sand bruises or abrasions which would ordinarily have resulted had he hit the beach as TCID claimed. If we consider together the testimony of the doctor, and of the admitting clerk and nurse, and give full credence to what they claimed Wyatt said, in no way does the aggregate add or detract from the evidence which was already before the jury. Wyatt may have thought he hit a sand bar concealed in shallow water, but he did not know. *Whether he was upset because of hitting sand is irrelevant anyway if it was the stump which hit his head and caused the injury.* When the stumps became evident, the real cause of the injury became apparent, or so the jury could find.

The judge's admonition in Instruction 14 merely directed the jury to consider special circumstances, such as the lack of knowledge of Wyatt and his companions and absence of sand burns, which appear to be nothing more or different than the average jury of reasonable persons could or would reasonably consider anyway. The presumption that the verdict was not the result of prejudice clearly is not rebutted nor is it probable that there would be a different result from a new trial.

4. It is also contended that Instruction 32,[4] given with Instruction 33,[5] was erroneous. It is well settled that before there may be found an assumption of risk, there must be a voluntary exposure to danger, actual knowledge of the risk assumed, and consent to assume it. Downing v. Marlia, 82 Nev. 294, 417 P.2d 150 (1966); Frame v. Grisewood, 81 Nev. 114, 399 P.2d 450 (1965); Sierra Pac. Power Co. v. Anderson, 77 Nev. 68, 358 P.2d 892 (1961); Papagni v. Purdue, 74 Nev. 32, 321 P.2d 252 (1958); Hotels El Rancho v. Pray, 64 Nev. 591, 187 P.2d 568 (1947).

The instruction complained of is not erroneous.

Affirmed.

MOWBRAY, J., and BABCOCK, D. J., concur.

MANN, D. J., dissenting:

I cannot agree with the conclusion reached by the majority. In my opinion, the giving of Instruction No. 14 was error which affected the substantial rights of the parties and that a new trial is required.

Instruction No. 14 advises the jury that evidence of the oral admissions of a party, other than his own testimony in the trial, ought to be viewed by them with caution. The majority state that the instruction may have been merely an instruction by the judge calculated to call the jury's attention to special facts. In my opinion, this is a function of the trial judge which the Constitution of Nevada expressly prohibits. Directing the jury to view the respondent's oral admissions with caution, within the factual context of this case, necessarily focuses attention upon the limitations placed upon trial judges. Under the common law, a judge was allowed considerable latitude in

[4]INSTRUCTION NO. 32. "A person has assumed a risk when he freely, voluntarily and knowingly, places himself in, or remains in, a position of danger and voluntarily exposes himself to a danger which he knows does exist. A person who thus assumes a risk is not entitled to recover for damages which resulted from the danger to which he thus exposed him."

[5]INSTRUCTION NO. 33. "While plaintiff, Cecil Wyatt, Jr., may have assumed the risk of the normal spills incident to water skiing, he did not assume the risk of injury that would be caused to him by concealed objects or diminished depth of which he had no actual knowledge. The defense of assumption of risk requires actual knowledge of a specific hazard that produces injury and a voluntary consent and exposure to it on his part."

commenting upon the evidence and expressing an opinion on the facts. 53 Am. Jur., p. 462, § 585. In federal courts the trial judge has similar discretion and may be more of an activist. This role has been denied trial judges in Nevada by the express provisions of the Constitution. Nev. Const. art. 6, § 12. All questions regarding the wisdom and expediency of this limitation upon the functions of trial judges were settled by the people when the Constitution was adopted.

The clear purpose of the constitutional provision is to prohibit the trial judge from making known to the jury his *opinions* as to which witnesses are entitled to be believed or disbelieved, or how much weight should be given to either specific testimony or a general category of testimony. If he calls attention to special facts or directs the jury to consider special factual circumstances in judging the weight to be accorded oral admissions, this reflects his view as to how the jury should determine the weight of that evidence. As stated in State v. Warren, 18 Nev. 459, 465, 5 P. 134, 138 (1884): "The vice of remarks like those under consideration, * * * is not that they take from the jury their right to judge of the facts, but is that they throw the weight of the court's opinion into the scale opposed to defendant, when he has the right to be judged by the evidence as construed by the jury, uninfluenced and unbiased by any opinion of the judge."

I do not say that the giving of a so-called "cautionary" instruction is, per se, an expression of opinion by the trial court on matters of fact. If the law requires a certain quantum of proof in a particular situation to establish a fact or facts, or if the rules of law view with some distrust a particular source of testimony, such as that of an accomplice, it may be permissible to call this to the attention of the jury by a cautionary instruction. When that is done the trial judge is instructing the jury on a matter of law and the instruction may be quite proper. Thus, instructing the jury to view with caution the testimony of an accomplice, the testimony of an informer, or the testimony of a child may be warranted if the court is stating a general rule of law which is applicable in a given situation. Carlson v. State, 84 Nev. 534, 445 P.2d 157 (1968); Crowe v. State, 84 Nev. 358, 441 P.2d 90 (1968). However, if the motivation of the trial judge in giving the instruction in a particular case is prompted by special facts or factual circumstances which he thinks the jury should consider in determining the weight to be given certain evidence, and if he so instructs the jury, then it seems to me that he is putting his opinion to work in the deliberations of the jury.

The record here does not reflect the reason that the instruction was given in this particular case. However, it is well-settled that the oral admissions of a party are admissible and that they are not regarded as "second class" evidence to be viewed with "caution." This issue was settled in Peterson v. Pittsburg Silver Peak Gold Mining Co., 37 Nev. 117, 140 P. 519 (1914), wherein the court stated, "* * * But, whatever may be the weight or significance to be given to admissions against interest, or declarations inconsistent with the contentions of the party who makes them, it is nevertheless a rule that, when a party to a civil action has made an admission of fact material to the issue, it is admissible against him. The weight and consideration to be given to such admission or declaration, whether great or nil, is for the jury." (37 Nev. 117, 135, 140 P. 519, 526.) This principle withstood a recent attack when this court held that it was not error to refuse to give an instruction that oral admissions of a party ought to be viewed with caution. Beasley v. State, 81 Nev. 431, 404 P.2d 911 (1965). The court noted that the appellant's contention that such an instruction should be given was novel, but that it did not believe that it was the law, either of Nevada or the United States. This court has also held that a statement made by the trial judge, which was deemed the equivalent of an instruction, incorrectly advising the jury that a dying declaration had greater weight and standing than the law provided, was error. State v. Scott, 37 Nev. 412, 142 P. 1053 (1914). Oral admissions against interest of a party do not constitute a class of evidence which is inherently unreliable or to be viewed with distrust, and in my opinion, the instruction so characterizing such evidence did not correctly state the law.

True, the respondent contends that the evidence of his oral admissions in this case warranted the cautionary instruction. He claims that he was in severe pain and under sedation when some of the statements were made and he argues that the evidence shows vague and imperfect recall by the witnesses to whom the oral admissions had allegedly been made. However, there was conflicting evidence as to these matters, and this points up the precise situation which our Constitution requires the jury to resolve, without any opinion by the judge. If the motivation of the trial court in giving this cautionary instruction was due to a belief on his part that the oral admissions were given in a setting which made them unreliable, then it would follow clearly that such would be an expression of opinion as to the weight to be given certain testimony, and that it would be prohibited by the constitutional provision cited above.

This court has been careful to preserve this barrier between judge and jury as enunciated in the Constitution. It has pointed to the fact that it is natural for juries to be greatly influenced by the remarks of the judge. They are told, with emphasis, that it is their duty to follow the court's instructions. If the comments of the trial judge in ruling upon the admission of evidence or in giving instructions indicate an opinion that certain ultimate facts have been proven or not proven where the evidence is conflicting, or that give an opinion, direct or indirect, as to the weight to be accorded certain evidence, then it has been uniformly held that such is error. State v. Bonds, 1 Nev. 31 (1865); State v. Duffy, 6 Nev. 138 (1870); State v. Harkin, 7 Nev. 377 (1872); State v. Tickel, 13 Nev. 502 (1878); State v. Warren, 18 Nev. 459, 5 P. 134 (1884); State v. Scott, 37 Nev. 412, 142 P. 1053 (1914). The effect of such an opinion is not cured by other instructions which advise the jury of its independent function in determining the facts. State v. Ah Tong, 7 Nev. 148 (1871). Other states which have similar constitutional provisions have held that a cautionary instruction which is prompted by considerations affecting the weight of the testimony cannot be given. Gianini v. Cerini, 171 P. 1007 (Wash. 1918); Brown v. Atlantic Coast Line R. Co., 64 S.E. 1012 (S.C. 1909).

Instruction No. 14 is an instruction advising the jury as to how they should consider a general category of evidence. The majority opinion states that the jury is merely being directed to consider special circumstances such as the lack of knowledge of Wyatt and his companions and the absence of sand burns in determining the weight to be accorded his oral admissions. It is my view that this is precisely what our Constitution seeks to prevent.

I also believe that the error is such as to require a new trial. The evidence of the oral admissions of respondent relate to statements that he made when he was brought to the hospital after the accident. The admitting clerk testified that she asked him how the accident happened and he replied that he had been water skiing behind a boat and that he ran up on the beach, or that his ski ran up on the beach. The admitting nurse testified that in response to a similar question, the respondent said that he was coming in toward shore to get off the skis and he fell on the beach. A history taken by a consulting physician a day or two after the accident disclosed that respondent said that apparently the boat got a little too close to the shore and that his water skis hung up on the sand, causing him to quickly decelerate and fall. The doctor observed that he stated that he

did not lose consciousness and that as soon as he stopped rolling he was immediately aware that he had no feeling in his legs. Another record, that of his attending physician, disclosed a history that shortly prior to admission the patient ran up on the beach when water skiing and started rolling, that he did not lose consciousness and that when he fell he was aware that he did not have any sensation of the body and could not move his legs.

Wyatt's theory was that the solid object he hit was one of the submerged tree stumps. Indeed, he is necessarily committed to this view if he is to show that the negligence of TCID was the proximate cause of his injury. TCID could be charged with negligence if the variable water level of the lake covered known underwater hazards. If Wyatt ran aground while coming into the beach to dismount, or even if his single slalom ski hit the sand in shallow water, it would be impossible to relate this cause of the accident to any negligent act of TCID. Wyatt stated that he hit something that felt like a solid object, which he claimed was later disclosed to be the tree stump. His companions did not see what he hit, nor did they discover any object when they came to Wyatt's aid. TCID, which does not have the burden of proof, claims that Wyatt hit the sand. It suggests he hit the beach when he came in to dismount from the ski, or that he was too close to the shore and hit the sand in shallow water. Wyatt's oral admissions would support either theory. The available circumstantial evidence does not shed much light on the controversy. As pointed out in the majority opinion, there were no sand burns or bruises on Wyatt's body, such as might be the case if he rolled on the sand of the beach. On the other hand, it is equally true that there were no scratches or other marks on the ski such as might be expected if the ski hit the jagged tree stump. Wyatt's companions state that Wyatt was propelled forward hanging onto the tow rope, indicating that the ski came to a sudden stop. On the other hand, it is doubtful that the front portion of a planing ski would strike a submerged stump not much more than six inches in diameter and come to a sudden stop. In planing, the front part of the ski would tend to be raised, and a glancing blow on the midsection of the ski is perhaps more probable. Wyatt felt that he had hit his head on the lake bottom and the lack of lacerations on his head would tend to negate any conclusion that he hit his head on the tree stump. This possibility, suggested in the majority opinion, was not advocated by Wyatt and I can find little or no support in the evidence to support this theory. Wyatt was the witness in the best position to know

how the accident occurred. As a matter of fact, since no one saw what he hit, he was the only witness who could describe what he saw or felt to help explain the occurrence. His statements as to what happened were of critical importance, both to himself and TCID.

In determining whether the error substantially affects the rights of the complaining party, it may be conceded that the burden is on the appellant to establish the probability of a different result if it were not for the erroneous instruction. Prior decisions of this court furnish adequate guidance for analysis and in this case I do not believe that it is necessary to resort to presumptions.

NRCP 61 states the rule of harmless error. Its provisions are about the same as the prior law and I agree with the concurring opinion of Justice THOMPSON in Lee v. Baker, 77 Nev. 462, 469, 366 P.2d 513, 517 (1961), wherein he stated, "I find no substantial difference between NRCP 61, effective January 1, 1953, and the prior law, NCL 8622." That case states that the discretion vested in the appellate court must be guided by such applicable legal principles as may have become recognized as proper in determining the course of justice.

One factor to be considered is the degree of conflict in the evidence. If there is a sharp conflict in the evidence relating to negligence and proximate cause, the improper admission of evidence material to such issue is more likely to be considered harmful. Lee v. Baker, supra. It would seem to me that the same rule would apply to the giving of an erroneous instruction, especially where the instruction is one upon the evidence and its effect and which dilutes the weight of evidence which sharply conflicts with evidence favorable to the other party.

Another factor to be considered is whether the question of liability is close on the facts. If so, prejudicial error may more easily result. Boyd v. Pernicano, 79 Nev. 356, 385 P.2d 342 (1963). If the error would be harmless as to one issue in the case, but contains multiple possibilities of improper application as to other issues, prejudicial error will result. Eldorado Club, Inc. v. Graff, 78 Nev. 507, 377 P.2d 174 (1962).

It is a uniform rule that, except for those cases where no prejudice results, that a charge indicating the opinion of the court as to the weight of the evidence is ordinarily reversible error, and the weight of authority is that it is not cured by other instructions telling the jury it is their exclusive province to determine the facts. (For a statement of this general rule see 5A C.J.S. § 1767, p. 1231 citing in excess of 60 cases from various jurisdictions.)

It is apparent that Wyatt's oral admissions were a critical part of the case of TCID, constituting its major evidentiary thrust. It is likewise clear that they were admissible with the weight to be given them to be determined by the jury. Peterson v. Pittsburg Silver Peak Gold Mining Co., supra. It follows that diluting the weight to be accorded those admissions in the face of the sharp conflict in the evidence affected a substantial right of TCID. NRCP 61. The majority opinion states that the judge's admonition in Instruction No. 14 merely directed the jury to consider special circumstances which the average jury of reasonable persons could or would reasonably consider anyway. The "special circumstances" related deal with factual matters and I cannot agree that the error can be minimized in this manner. Wyatt's counsel, as would be expected, discussed all of the factors which affected the weight to be given these oral admissions. However, his argument was fortified by Instruction No. 14 which he used with telling effect. There were numerous and repeated references to the content of Instruction No. 14, emphasizing that the *law* required them to view such evidence with caution and that the *law* itself required that the evidence of oral admissions be given less effect than testimony given under oath at the trial. He argued the reason for this so-called *law*. Surely the jury would have considered all factors relating to the weight of the admissions. But here they could not consider those factors in the light of their own judgment and experience, because if they heeded the court's instructions, they were forewarned that the law itself required them to view those admissions with caution, if not distrust.

Even though a substantial right of TCID may have been affected, it is necessary to determine whether it is reasonable to expect a different result if it were not for the error. None of us can compute the evidence without the error and arrive at a hypothetical jury verdict. In my opinion, we must adopt some sort of objective test, as the choice between the harmless or prejudicial nature of the error cannot be patent guesswork. I would exclude the evidence of Wyatt, since the error affected only his testimony, and look to the record to determine whether there is clear and convincing evidence to show that the same result would have been obtained. As noted, the physical facts or circumstances do not support the theory of Wyatt any more than they support the theory of TCID. His two companions did not see him hit anything. They could only relate that he was skiing along and suddenly somersaulted head first in the water holding on to the tow rope. They did not observe anything regarding the ski itself. The fact that tree stumps in the general

area were exposed a month later, while important in connection with Wyatt's testimony that he hit a solid object, cannot be fixed as the cause of the accident by connection with any of the testimony of his companions. In my view, it would be impossible to establish that the cause of the accident was proximately caused by any of the negligence attributed to TCID, without Wyatt's testimony.

Consequently, I believe that appellant has shown that, if it were not for the error, a different result might reasonably be expected, which is the test set forth in Peterson v. Silver Peak Gold Mining Co., supra, and followed in subsequent Nevada cases. It is also my opinion that appellant has met any burden to show that the error was not harmless, although I note that this court has previously stated that, "Such a presumption (of prejudice) may be proper in cases where the record of the evidence discloses that 'the erroneous ruling may have affected the verdict.'" Pfister v. Shelton, 69 Nev. 309, 250 P.2d 239 (1952).

I agree with the statement expressed in the concurring opinion in Lee v. Baker, 77 Nev. 462, 471, 366 P.2d 513, 517 (1961), that, "A trial free from error is more likely to produce a just result than one in which error has occurred." I would remand the case for a new trial.

BATJER, J., concurs in the dissent.