Hardesty, J.,
with whom Maupin and Parraguirre, JJ., agree, concurring in part and dissenting in part:
I agree with the majority that the district court improperly instructed the jury because the “mere happening” jury instruction *1010 given was an incomplete statement of the law. I do not, however, agree with the majority that the error committed by the district court was prejudicial to the Cooks because, under the particular circumstances of this case, it is not probable that a different result might have been reached even if the instruction at issue included the word “alone.”
Although the majority suggests that there is a sharp degree of conflict in the evidence presented on appeal that presents the possibility of a different verdict if an accurate instruction had been given, in my view, the evidence does not demonstrate that it is probable that a different result might have been reached. Credibility issues were raised when bias testimony was elicited concerning Drs. Ameriks, Kabins, and Hirschfeld, which the jury weighed in its decision. From the evidence presented, the jury apparently rejected testimony regarding whether specific imaging equipment had actually been requested and whether the angiography suite had been ordered and a subsequent assurance given that it would in fact be available. Even if the imaging equipment and angiography suite truly had been ordered and made available to Mrs. Cook’s physicians, sufficient expert testimony was presented at trial to support the jury’s verdict, and substantial evidence supported that Mrs. Cook’s own medical condition contributed to her unfortunate loss. I believe that despite the district court’s incomplete instruction, the jury was properly instructed on the medical malpractice elements required to be proven by the Cooks, and the jury apparently rejected the Cooks’ evidence.
Sunrise elicited testimony from Dr. Hirschfeld that he was friends of and socialized with Dr. Kabins and had assisted Dr. Kabins in prior surgeries. Dr. Hirschfeld also testified that he had been partners with Dr. Ameriks for nine years.
The record on appeal further shows that from the evidence presented at trial, the jury could have concluded that Drs. Ameriks and Kabins lacked credibility in their account of the events surrounding Mrs. Cook’s treatment. Despite these physicians’ claim that more sophisticated imaging equipment was requested and denied, and that an order was made for the angiography suite with an assurance given that it would be prepared, Drs. Ameriks and Kabins failed to note these requests in Mrs. Cook’s hospital records. The physicians claimed that Sunrise’s policy prevented them from noting such issues in patient records, however, Drs. Ameriks and Kabins testified that their private office records also lacked any discussion of purported equipment requests even though the hospital had no control over those records. While Drs. Ameriks and Kabins have previously complained when equipment was not up to standards, according to Sunrise’s staff, no verbal or written complaints related to an alleged inability to adequately treat Mrs. Cook were brought to Sunrise’s attention by either physician. Sun *1011 rise’s staff further testified that sufficient and adequate equipment was available to meet Dr. Ameriks’ imaging needs during the first revascularization attempt, if he truly needed additional images and had actually asked for more sophisticated equipment than the portable x-ray machine that was used.
Dr. Kabins’ credibility was further questioned when it was suggested that Dr. Kabins waited until his deposition was taken to disclose the circumstances surrounding the order for the angiography suite. Following that deposition testimony, the Cooks’ attorney informed Dr. Hirschfeld, the Cooks’ expert, that Dr. Kabins had provided ‘ ‘the missing link’ ’ at his deposition.
The jury may also have concluded that Dr. Hirschfeld’s expert opinion lacked credibility. On cross-examination, Dr. Hirschfeld testified that for purposes of evaluating liability, the Cooks did not provide him with a copy of Dr. Ameriks’ 2002 affidavit, Sunrise’s witnesses’ depositions, the computerized schedule for the angiography suite in question, the C-arm inventory list (which showed what equipment Sunrise had in stock and was potentially available at the time), Mrs. Cook’s deposition, and Mrs. Cook’s x-rays. Dr. Hirschfeld, however, based his expert opinion, in part, on conversations he had with Drs. Kabins and Ameriks shortly before trial.
Thus, there appears to have been credibility issues surrounding Drs. Kabins’, Ameriks’, and Hirschfeld’s testimony that were more appropriately weighed by the jury, rather than this court. Accordingly, in weighing the evidence and witnesses’ credibility, the jury apparently rejected these physicians’ testimony on these points.[1]
I also disagree with the majority’s decision to reverse the jury’s verdict because it does not appear that the question of liability was close in this case. Even if Dr. Kabins had ordered the angiography suite during the first revascularization attempt, Sunrise’s experts testified that taking Mrs. Cook to the angiography suite first would have merely increased the time her vessels were without oxygen, thereby increasing the potential damage to her limb. It was undisputed that the therapeutic interventions capable of being performed in the angiography suite, as described by the Cooks’ expert, Dr. Hirschfeld, were not considered by Dr. Ameriks in deciding to order the angiography suite. Indeed, Dr. Ameriks testified that the only reason to move Mrs. Cook to the angiography suite was to image her limb for diagnostic purposes. And Sunrise’s experts testified that, even after completing this diagnostic exam, which was unnecessary because Dr. Ameriks knew what the problem was, Mrs. Cook still needed to go to the operating room; the only *1012 thing that could have been accomplished by using the angiography suite first would have been to increase the ischemia time.
Additional evidence relevant to the jury’s consideration of proximate cause was Mrs. Cook’s medical condition. Dr. Ameriks testified that Mrs. Cook’s small vessels and preexisting polio condition decreased the window of opportunity to revascularize Mrs. Cook’s limb and likely resulted in more permanent damage to her than to an average individual. And despite placing blame on Sunrise and its staff for Mrs. Cook’s resulting injury, Dr. Hirschfeld testified that Mrs. Cook’s medical condition also contributed to the loss of her limb. In particular, Mrs. Cook had a history of polio, smoked for years, suffered from hypertension, and had moderate to severe atherosclerosis in her lower left leg, which was revealed by a pathological examination of the amputated limb. These preexisting conditions made it difficult for the surgeons to treat Mrs. Cook’s limb.
Following the close of all the evidence and counsel’s arguments, the jury was given various instructions. Specifically, the jury was instructed to consider all the instructions as a whole and in light of the others and to draw all reasonable inferences from the evidence; it was also instructed on proximate cause and concurrent causes and the medical malpractice elements that the Cooks were required to establish. The jury was also instructed on a hospital’s standard of care. With these instructions, including the incomplete “mere happening” jury instruction, and considering the above evidence, in my view, the Cooks have not shown the probability of a different result in the absence of a more specifically worded “mere happening” instruction.[2]
As the record shows that prejudicial error has not been established because a different result might not have been reached even if the district court had modified the instruction at issue to include the word “alone,” and the jury was otherwise properly instructed, I would affirm the district court’s judgment entered upon the jury’s verdict.

See Barrett v. Baird, 111 Nev. 1496, 1503, 908 P.2d 689, 694 (1995) (providing that jurors are free to reject or accept an expert’s opinion), overruled on other grounds by Lioce v. Cohen, 124 Nev. 1, 174 P.3d 970 (2008).

Cf. El Cortez Hotel, Inc. v. Coburn, 87 Nev. 209, 212, 484 P.2d 1089, 1091 (1971) (providing that although the district court’s comment on counsel’s closing argument was an incomplete statement of the law, reversal was not warranted when the jury was also instructed on proximate cause and told to consider all the jury instructions together); see also Truckee-Carson Irr. Dist. v. Wyatt, 84 Nev. 662, 667, 448 P.2d 46, 50 (1968) (providing that there is a “presumption of integrity of verdicts in civil cases”).