CHARLES STEEN, MICHAEL REUBEN DeSALVO, EDWARD BLUMSTROM and FRED HILL ATCHE–SON, Appellants, v. JOHN P. GASS, Respondent.

No. 5615

April 28, 1969                                    454 P.2d 94

[Rehearing denied May 27, 1969]

*Vargas, Bartlett & Dixon,* for Appellant Steen; *Cooke & Roberts,* for Appellant DeSalvo; *Breen & Young* and *Jerry Carr Whitehead,* for Appellant Blumstrom; *Goldwater, Taber, Hill & Mortimer,* for Appellant Atcheson, all of Reno.

*Bradley & Drendel; Fry and Fry,* of Reno, and *Lally, Martin & Chidlaw,* of Sacramento, for Respondent.

250

## OPINION

By the Court, COLLINS, C. J.:

This is an appeal from a judgment of the Second Judicial District Court, pursuant to a jury verdict awarding respondent (plaintiff below) compensatory damages against the four appellants (defendants below), in the sum of $500,000 and punitive damages against appellant DeSalvo in the sum of $10,000 and against appellant Blumstrom in the sum of $5,000 as a result of an assault and battery committed on January 31, 1964. All of the defendants filed notices of appeal. Respondent has executed a satisfaction of judgment in favor of Steen only and the appeal has been dismissed as to Steen. The appeal of Atcheson has also been dismissed, upon his motion. Only the appeals of DeSalvo and Blumstrom remain for our consideration. As to them we affirm the judgment.

On the evening of January 31, 1964, Steen, Gass, and a female companion were returning to Reno, Nevada, in a car driven by Steen after a basketball game in Carson City. While stopped at a stop sign on South Virginia Street in Reno, their car was bumped from the rear by a car driven by Atcheson in which Blumstrom, DeSalvo and another were passengers. Steen was agitated and used foul language toward Atcheson. This resulted in an argument between Steen and Atcheson in

which the others joined. Gass also was out of the Steen car during this encounter. Steen desired to call the police, but there was apparently no damage to his car and Atcheson talked him out of it. Prior to this incident, the occupants of the Atcheson car had been drinking. The two cars proceeded north on South Virginia Street. Steen testified that at one point the Atcheson car was maneuvered in front of him and stopped suddenly without warning. Steen slammed on his brakes to keep from hitting it and the car drove on. Traffic was heavy on South Virginia Street that evening. In the downtown area it was moving at a snail's pace. Atcheson testified that the others in the car indicated that the way Steen acted at the first encounter, Atcheson should have fought him right there. At approximately the intersection of North Virginia Street and First Street more words were exchanged between the occupants of the two cars. Both cars were stopped at the intersection, the Atcheson car, with Blumstrom driving at this time, was in front of the Steen car. Atcheson alighted from the passenger side of his car and went up to the driver's side of Steen's car and asked Steen if he would like to settle the affair. Steen accepted the challenge, and Atcheson suggested they go to Idlewild Park. The occupants of both the Steen and Atcheson cars informed the occupants of other cars that there was to be a fight at Idlewild Park.

At the park two fights took place. Steen and Atcheson engaged in one fight and Gass and Blumstrom engaged in another. The evidence is conflicting as to which of the two fights began first. Atcheson's friends jumped in to help him in his fight against Steen. Gass apparently had Blumstrom against Steen's car when DeSalvo jumped in to help Blumstrom. DeSalvo admits striking Gass about three times, and as Gass went down DeSalvo jumped on his chest. Blumstrom admits kicking Gass while he was down and also testified that DeSalvo kicked Gass. Blumstrom then went to the Atcheson car, and DeSalvo testifies that he proceeded to the Atcheson-Steen fight.

When the Atcheson-Steen fight broke up, Gass was discovered lying on the ground unconscious. Attempts were made by DeSalvo and others to revive him, and when this was unsuccessful Gass was put into Steen's car. DeSalvo, Blumstrom, and possibly others, then went to the "Fat Boy" Drive-in to call an ambulance. They returned to the park to pick up the other people and then went to Washoe Medical Center to await the ambulance. Steen proceeded out of the park with Gass in his car and stopped a merchant patrolman who also called an ambulance. Gass was taken to the hospital

in the ambulance. Steen proceeded to the hospital after the ambulance.

Gass suffered deep-seated brain injuries and a partial collapse of the right lung. He was in a coma for 17 days and remained in the hospital until May 1, 1964. The only physician to testify was Dr. Mack, who treated Gass from February 2, 1964. He testified to the severe and permanent brain injury that Gass suffered and he also stated that such injury was consistent with a blow or blows to the head with a fist, striking the head on pavement or being kicked in the head by a man.

Blumstrom and DeSalvo were placed under arrest at the Washoe Medical Center and taken to the Reno City Jail. They were both charged with attempted murder, assault with a deadly weapon, and assault with intent to do bodily harm. On the criminal charges, DeSalvo was represented by Harold O. Taber, the attorney who later represented Atcheson in the civil suit which is the subject of this appeal. Blumstrom was represented by other counsel. On advice of their attorneys, they both pleaded guilty to assault with intent to do bodily harm and both received probation.

There is one issue common to both appellants DeSalvo and Blumstrom and one issue pertaining to DeSalvo alone. These two issues are decisive of this appeal and, while other issues were raised by counsel, we limit our discussion to two pertinent points of error.

The one issue common to both DeSalvo and Blumstrom is this:

I.   Is there any substantial evidence in the record to establish that Gass did not consent to engage in mutual combat?

The issue concerning DeSalvo alone is this:

II.   Was the trial court's refusal to permit Harold O. Taber to withdraw from the case as attorney for Atcheson and its failure to require him to do so reversible error?

1.   An early case from this court, relied upon by all parties to this appeal, Wright v. Starr, 42 Nev. 441, 179 P. 877 (1919), sets down the rules for civil liability for assault and battery in this state. In that case, a woman was allegedly assaulted by a man in her room. The woman contended the man had grabbed and pressed her throat and neck with his hands, had pressed her watch into her flesh and had torn her clothing off. The man contended he merely kissed her with her consent, and when he attempted to kiss her goodby she demurred to the effort and he desisted. This court held in that case, in sustaining the verdict for the defendant, "To permit

a recovery of damages in a civil action for an assault, by one who has consented to or participated in the acts causing the injury, is to countenance a principle that one may profit by his own wrong—a theory obnoxious to both law and equity." Id. at p. 445. And further, at p. 446, "But we do hold that in an ordinary assault and battery in the common course of things, consent precludes a right of action for injuries received."

A careful reading of the record convinces us there is substantial evidence to sustain a jury finding that Gass did not consent to engage in mutual combat with anyone. On a direct appeal from a jury verdict, this court may only consider the evidence presented at trial to determine whether there was any substantial evidence to support the findings of the jury, or whether the conclusion reached by the jury was clearly wrong. Finnell v. Bromberg, 79 Nev. 211, 381 P.2d 221 (1963), cert. denied 379 U.S. 988 (1965); Quilici v. Battaglia, 78 Nev. 413, 374 P.2d 887 (1962). In considering the evidence for this limited purpose, this court must assume the jury believed those portions of the evidence most favorable to respondent. Barsland, Inc. v. Shaw, 83 Nev. 69, 422 P.2d 1003 (1967). Substantial evidence is defined as "something of substantial and relevant consequence, and not vague, uncertain or irrelevant matter not carrying the quality of 'proof' or having fitness to induce conviction." Peardon v. Peardon, 65 Nev. 717, 201 P.2d 309 (1948).

The record shows that Gass has no memory of the events that occurred on the evening in question and he therefore could not testify concerning them. However, the testimony of Steen indicates that after Steen accepted Atcheson's invitation to meet him at Idlewild Park, Gass expressed a fear that there would be a mob there and told him not to go. Steen's reply was that the fight was between Steen and Atcheson and this would be the only fight. Steen testified also that he did not know where Idlewild Park was and that Gass gave him directions on how to get there. This is not necessarily evidence of consent, since Gass was assured by Steen that the fight was between Steen and Atcheson. When they arrived at Idlewild Park, some of the others were already there and Steen told Gass to stay in the car and lock the door, and as far as Steen was aware Gass did not get out of the car when Steen did.

Blumstrom testified as follows: When he got out of the car which he was in he saw Steen and Atcheson fighting and

he saw Gass get out of Steen's car. It was Blumstrom's understanding that he was supposed to fight Gass. This was apparently the arrangement that had been made by the occupants of the Atcheson car on the way to the park. When Gass alighted from the car, Blumstrom and Gass were about 20 feet apart and they started walking towards each other. There was no evidence that Gass was aware of the understanding of Blumstrom that they were to fight. Blumstrom was approaching Gass with the intent to strike him; and Blumstrom swung first without any words being exchanged between them, although Blumstrom did state that Gass was "starting to" strike him. Blumstrom contends that Gass was walking directly towards him, though the Steen-Atcheson fight was in the other direction, and that Gass met Blumstrom about halfway in regards to the 20-foot distance between them. However, John Douglas Crickard, a witness to the altercation, testified that when Gass got out of the car he was very close to the car when Blumstrom hit him and that the car door stayed open.

The above testimony is sufficient to support a finding by the jury that Gass did not consent to fight Blumstrom. It is true that he did go to the park with Steen after voicing his protest, and he did leave the safety of the car, but there is no evidence to indicate that he believed anyone other than Atcheson and Steen was to fight, nor was there any evidence to indicate that Gass intended to fight others at the park when he alighted from the car.

The evidence is virtually uncontradicted that Gass did not consent to fight DeSalvo. DeSalvo testified that when he first observed Gass the fight with Blumstrom had already commenced. Blumstrom was bent over the back or front of Steen's car and Gass was facing him and holding him over the car. It appeared Blumstrom was losing the fight, and DeSalvo approached Gass from the right. Gass turned halfway toward DeSalvo, and DeSalvo hit him approximately three times and he went down, whereupon DeSalvo jumped on him and immediately thereafter proceeded to the Steen-Atcheson fight to kick Steen. Blumstrom's version of DeSalvo's interruption of the fight with Gass is as follows: Blumstrom had the distinct feeling that he was losing the fight, so he grabbed Gass and just held on. Gass had him up against the car when "Mike [DeSalvo] came running up, out of the blue, and he started hitting him with roundhouse swings, and he was swinging in such a manner he was hitting me a few times, and I was pinned . . . Somehow I got him away, either Mike hit him or I pushed him away, and he went to the ground."

It is concluded that there is substantial evidence in this case to support a jury finding that Gass did not consent to engage in mutual combat with anyone. On this basis, the admission by DeSalvo and Blumstrom that they hit him and kicked or jumped on him is sufficient to sustain a verdict for respondent without specific proof of whether the head injury suffered by respondent was caused by being struck with fists, falling on the pavement or being kicked.

Applying the rule in Wright v. Starr, supra, to this case, there being no consent to engage in mutual combat by one assaulted and battered, a civil judgment for damages must be sustained.

2. We consider next the issue raised by DeSalvo alone; whether the lower court's failure to permit Harold O. Taber to withdraw as attorney for Atcheson and its refusal to require him to withdraw was prejudicial error. We conclude that the order of the lower court was error, but under all the circumstances shown from the record it was not prejudicial.

While the lower court relied upon Wait v. District Court, 81 Nev. 612, 407 P.2d 912 (1965), in refusing to require Taber's withdrawal, we do not think that decision controls the question presented here. The appropriate rule is that announced in Boyd v. District Court, 51 Nev. 264, 274 P. 7 (1929), where this court, in discussing the rule that an attorney cannot represent conflicting interests, stated:

"The rule is a rigid one, and designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be lead to attempt to reconcile conflicting interests rather than to enforce to their full extent the rights of the interests which he should alone represent."

Likewise, Canon 6 of the A.B.A. Canons of Professional Ethics reads as follows:

"It is the duty of a lawyer at the time of retainer to disclose to the client all the circumstances of his relations to the parties, and any interest in or connection with the controversy, which might influence the client in the selection of counsel.

"It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this canon, a lawyer represents conflicting interests when, in behalf of one client, it is

his duty to contend for that which duty to another client requires him to oppose.

"The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed."

The A.B.A. canons are a part of the rules of professional conduct of the State Bar of Nevada. SCR 203. See also Supreme Court Rules 166, 169 and 179.

The record clearly indicates that DeSalvo was charged with the criminal offenses of attempted murder, assault with a deadly weapon and assault with intent to do bodily harm. He was represented in the criminal proceedings by Harold O. Taber, the same attorney who represented Atcheson in the civil action which gave rise to this appeal. On the advice of Taber, he pleaded guilty to the least of the three charges, assault with intent to do bodily harm, and was granted probation. Before entering the plea of guilty, he was advised that public opinion in the Reno area was very strong against him because of the publicity given the case, and it would be impossible to get a fair trial in Washoe County. He was also advised that an attempt to have the case tried in another county had been unsuccessful and that if he entered a plea of guilty to the lesser charge, he could probably be granted probation.

On January 10, 1968, five days before the civil trial, Harold O. Taber filed a Motion for an order permitting him to withdraw as attorney for Atcheson on the ground that his continued representation of said defendant would be in violation of Canon 6 of the Rules of Professional Ethics, which prohibits attorneys from representing conflicting interests. On the same day, Bruce D. Roberts, counsel for DeSalvo in the civil suit, sought by motion an order requiring Harold O. Taber to withdraw as counsel for Atcheson.

On January 11, 1968, Judge Thomas O. Craven denied both motions, and in relying on the case of Wait v. District Court, supra, stated:

". . . It is to be noted that at that time the defendant DeSalvo was and always had been a party defendant to the action. Therefore when Mr. Taber undertook the defense of Atcheson, who was added as a party defendant he did so recognizing there was no conflict of interest in the action. If there was no conflict there would be no reason at any time to ask to be relieved of his defense of Atcheson, and if there was a conflict he shouldn't have taken the defense of Atcheson in

the first place. The only conclusion to which the Court can come is that there was not and is not a conflict.

". . . The very least that can be said is that if a conflict exists, Mr. Taber knew, or definitely should have known, of such conflict of interest at that time. The only possible inference is that there is no conflict. If a conflict should later develop that will become the problem of, and the responsibility of, Mr. Taber according to the authority of Wait v. District Court, 81 Nev. 612."

On the first day of the trial, counsel for DeSalvo renewed the motion to force Taber to withdraw as Atcheson's counsel, stating that he did not know Taber had represented DeSalvo in the criminal proceedings and that DeSalvo did not understand what a conflict of interest was until counsel explained it to him.

That motion was denied by Judge John E. Gabrielli, who stated:

"I feel that I am bound by Judge Craven's decision on this point. And, Mr. Roberts, your statements here today are in the nature of an offer of proof on those matters, so I think that the Supreme Court would be adequately advised of what you intended to prove, if permitted to proceed at this point.

"So, with that understanding, I will deny your request to produce the evidence that you request at this time on that motion. And, as I said, I feel bound by Judge Craven's decision at this time."

There the matter rested, with the contended error properly and carefully preserved for consideration by this court until, during the trial, the problem was brought to the attention of the jury by DeSalvo's counsel over the objection of counsel for Gass.

Why DeSalvo's counsel brought that information to the attention of the jury is not clear from the record. Up to that point the question of Taber's dual role was singularly one of law, upon which the trial court had ruled twice. Apparently, Mr. Roberts' purpose was to make the circumstances of Taber's previous representation of DeSalvo some sort of fact issue for the jury's consideration, because immediately following that testimony in the record, Mr. Roberts also elicited testimony from DeSalvo that he pleaded guilty to a lesser offense upon the advice of Mr. Taber and the reasons why he did so, namely, he could not get a fair trial in Washoe County, he could not get a change of venue, and that he would probably get probation, which he in fact did.

It is difficult to see how Taber's previous representation of

DeSalvo could be made a proper fact issue for the jury's consideration unless it could be contended that Taber somehow failed in the performance of his professional obligation to DeSalvo in advising him to plead guilty to the lesser criminal charge. Nowhere in the record is that suggested by anyone. That this point was not a proper fact issue for the jury is borne out from the instructions given the jury by the court. No instruction was given which deals with the subject.

Appellant DeSalvo contends that he was prejudiced by Harold O. Taber's remarks to the jury while arguing on behalf of his client Atcheson in this civil action. Twice during his argument Taber referred to DeSalvo. On the first occasion he said: "My position is that he [Atcheson] is not legally responsible for the intervening felonious unforeseeable acts and conduct of DeSalvo and Blumstrom." On the second occasion he said:

"But I submit to you people [jurors] that no teenage boy, or even an adult, could or should have reasonably foreseen that an intervening felony would be committed on John Gass, which results in the injuries described by Dr. Mack."

These statements by Taber consisted of nothing more than a statement of fact to be found in the records of the Second Judicial District Court where DeSalvo and Blumstrom did plead guilty to the crime of assault with intent to do bodily harm. There was no showing, nor even an inference, that confidential material was divulged.

Taber was the last of defense counsel to make closing argument to the jury. Prior to him, the jury was addressed by Mr. Roberts on behalf of DeSalvo, Mr. Whitehead on behalf of Blumstrom, and Mr. Logan on behalf of Steen.

Each of those counsel also referred in some manner or other to DeSalvo's criminal conviction. Mr. Roberts, DeSalvo's counsel, speaking before Mr. Taber in his argument, made the following reference to DeSalvo's conviction:

"Now it is true that Michael DeSalvo and Ed Blumstrom pled [sic] guilty to a charge of assault to do bodily harm. And this plea of guilty was admissible in evidence as an admission against those two defendants.

. . . . .

"Now on the advice of counsel, they [DeSalvo and Blumstrom] took the opportunity and pled [sic] guilty to the lesser of the three charges. And its very difficult now to second-guess that decision. What I would have done under the circumstances as they existed at that time, had I been representing

Michael DeSalvo, I don't know. It's very possible I would have done the same thing."

Mr. Whitehead, Blumstrom's counsel, also speaking before Mr. Taber, made the following reference to DeSalvo's conviction:

"Now, pleas of guilty were entered, as was mentioned by Mr. Roberts, for Mike DeSalvo . . . In addition, there is one further matter to be considered in this case. The plea to the charge was assault with intent to commit bodily harm. And I would submit, ladies and gentlemen of the jury, that there can be no question from the evidence in this case, that both boys did have an assault with intent to commit bodily harm.

. . . . .

"We would submit to you on the issue of liability that the jury find, because of these facts, either one or two things: You may find perhaps that Mike DeSalvo alone is responsible for the damages incurred in this case. And that I think would certainly be a legitimate conclusion. However, if you do not find that way, then I think that there must be a decision that encompasses the balance of the defendants, because Edward Blumstrom did not participate in the illegal and unlawful force that followed . . . ."

Mr. Logan, Steen's counsel, also speaking before Mr. Taber, made the following reference to DeSalvo's conviction:

"It has come out that two individuals, Mr. DeSalvo and Mr. Blumstrom, were charged with several crimes after an investigation, and that they pleaded guilty to assault to do bodily harm, a felony. I can't believe, no matter what counsel says, that people who are innocent will plead guilty. Somebody kicked Mr. Gass, and it wasn't Mr. Steen, and I know it wasn't Mr. Atcheson."

We see no prejudice in the error.

Judgments against both Michael Reuben DeSalvo and Edward Blumstrom are affirmed.

ZENOFF, BATJER, and MOWBRAY, JJ., and O'DONNELL, D. J., concur.