CHARTER MEDICAL CORPORATION, a Delaware Corporation Qualified to do Business in the State of Nevada, Appellant and Cross-Respondent, *v.* DENNIS BEALICK, M.D., JORDAN GOODMAN, M.D., LTD., a Nevada Corporation, Respondents and Cross-Appellants.

No. 16633

August 27, 1987                                          741 P.2d 1359

[Rehearing denied November 30, 1987]

*Beckley, Singleton, DeLanoy, Jemison & List,* and *Sherman B. Mayor,* Las Vegas, for Appellant and Cross-Respondent.

*Gang & Berkley,* Las Vegas, for Respondents and Cross-Appellants.

## OPINION

By the Court, SPRINGER, J.:

This controversy relates to a lease of medical office space from appellant hospital to respondent doctors. The doctors sued the hospital, claiming that the hospital violated the lease agreements by not honoring the options for renewal granted in the lease agreements. A jury awarded damages to the doctors for breach of contract, and this appeal by the hospital ensued.

The doctors occupied premises leased from the hospital under a three-year lease which expired on February 29, 1980. The lease contained an option which is set out in full in the margin.[1] This is an outline of the terms of the option:

---

[1]1.  *Option to Renew, Negotiated Rent.* Lessee shall have the option to renew this lease for an additional term of five (5) years, beginning on March 1, 1980, and ending on February 28, 1985. Lessee shall exercise this renewal option by giving Lessor written notice of such exercise not sooner than October 1, 1979 and not later than January 1, 1980. Such five-year renewal term shall be on the same terms and conditions as are contained in this Lease, except for the provisions of Section 3, relating to annual and monthly rent.

Promptly after Lessee gives notice to Lessor of Lessee's exercise of Lessee's option to renew this Lease for an additional five (5) year term, Lessee and Lessor shall negotiate the amount of such annual rent to be due and payable by Lessee during such five (5) year renewal term. In no event shall the annual rent during such five (5) year renewal term be less than $1.00 per square foot of space as described in Section 1 of this Lease nor more than $6.00 per square foot of such space. In the event Lessee and Lessor agree on the amount of annual rent and monthly installments thereof due and payable by Lessee during such five (5) year renewal term, such agreement shall be made in writing. In the event Lessee and Lessor are unable to agree on the amount of such rent by January 20, 1980, *then Lessee shall have the right, exercisable on or before January 25, 1980, to terminate Lessee's exercise of this option to renew* this Lease for a five (5) year renewal term. Any such action by Lessee shall be made in writing to Lessor. Upon such action, taken in writing on or before January 25, 1980, Lessee shall have no obligation to lease the space covered by this Lease Agreement during the five (5) year renewal term provided by the Special Stipulation No. 1.

(Emphasis supplied).

1. The lessee has the right to renew for a five-year term, March 1, 1980 through February 28, 1985.
2. Lessee must exercise the option by written notice between October 1, 1979 and January 1, 1980.
3. The lease provided for in the option was to be on the same terms as the old except for rent. Rent was to be negotiated (within a bracket of $1.00 to $6.00 per square foot) and settled in writing by the parties.
4. The lessee, after exercise of the option, could still "terminate Lessee's exercise of this option" by written notice to lessor before January 25, 1980.

In sum, the doctors could get a new five-year term if they gave proper notice of option and if rent for the new term could be successfully negotiated by the parties and agreed upon in writing. The doctors also had the additional right, until January 25, to get out of the new lease, simply by terminating their "exercise" of the option—presumably if they were unable to negotiate a satisfactory rent arrangement for the new term or were otherwise dissatisfied with the new lease.

The doctors did not exercise their option by giving notice within the time required by the option agreement, but the hospital has waived this requirement and accepted the doctors' position that the option was exercised insofar as notice is concerned. The only remaining question is the effect that failure of the parties to negotiate an agreed-upon rent had on the rights of the parties.

The right that the doctors were given to terminate their option is problematical. It could be argued that an "escape" was given to the doctors in the event that rent or other problems relating to the lease could not be resolved before January 25. Although the lease does not give the hospital a similar escape, the position could be advanced that both parties contemplated nullification of option rights if no agreement had been "made in writing" before January 25.

The doctors did not seek to affirm the lease and retain occupancy, something that they were clearly entitled to do. (*See*, e.g., Cassinari v. Mapes, 91 Nev. 778, 542 P.2d 1069 (1975)), in which it was held that in these kinds of situations, in which an option provides for rental to be negotiated and the parties fail to reach an agreement, the option is enforceable and a reasonable rental will be imposed.) Rather, the doctors have taken the position that the hospital breached the option agreement, thereby entitling them to recover contract damages.

The hospital's response to this contention is that exercise of option was not effectuated, and the new lease could not go into effect until the new, negotiated rent had been agreed upon. Therefore, says the hospital, since rent was not agreed upon

within a reasonable time, the option expired with no liability being incurred thereunder by either party.

The hospital points out that in good faith it initiated a rental proposal in January[2] and that the rental amount contained in that proposal was never repudiated or rejected by the doctors; instead, the hospital claims, the doctors initiated a scheme of petty caviling about extraneous matters such as who was to bear the costs of painting the offices. The doctors counter by blaming the failure to consummate the rental negotiations entirely on the hospital.

The pivotal issue here, however, is not which party was at fault[3] but, rather, who, if anyone, violated the contract of the parties. The option right obviously cannot go on forever given the parties' inability to arrive on their own at an agreement on the rent. Of course, if it could be established that the hospital refused to negotiate, or, as put in offered Instruction D-2,[4] "failed to extend an opportunity [to the doctors] to lease offices at a rate of between $1 and $6 per year," then this could have possibly constituted a breach on the part of the hospital. If, on the other hand, the parties simply could not agree in writing on what the rent should be, then one or the other of the parties could have enforced the lease by suing under *Cassinari* to determine a reasonable rental; otherwise, the option, not having life perpetual, would die.

---

[2]On January 22, 1980, the hospital proposed the following rental arrangement (per square foot): Year 1, $1.50; Year 2, $1.75; Year 3, $2.00; Years 4 and 5, rate to be negotiated between $2.00 and $5.00.

[3]The doctors have independent claims arising out of claimed fault on the part of the hospital. They have charged the hospital with fraud and wrongful eviction and with the tort of bad faith. Neither tort claim was successfully prosecuted in the trial court. The doctors' bad faith claim is legally insufficient under Aleuvich v. Harrah's, 99 Nev. 215, 660 P.2d 986 (1983), *q.v.*

[4]Offered Instruction D-2 reads as follows:

Under the terms of the option provision of the lease agreement of March 1, 1977, Plaintiffs had a right to renew the lease for an additional five-year period with a rental rate of between $1 and $6 per year.

If you find that the Defendant failed to extend an opportunity to Plaintiff to lease offices at a rate of between $1 and $6 per year for the five-year term of the option, then you should find that the Defendant has breached its contract with Plaintiffs and that the Plaintiffs are entitled to recover damages as set forth in these instructions.

If you find that the Defendant did extend to Plaintiffs an opportunity to lease the property at a rate between $1 and $6 per year and withdrew that offer without affording Plaintiffs a reasonable time in which to accept the offer, then you should find for the Plaintiffs and assess damages as provided in these instructions.

If you find that the Defendant did extend to Plaintiffs an opportunity to lease the property at a rate between $1 and $6 per year and that Plaintiffs failed to accept the offer within a reasonable length of time, then you should find for the Defendant.

The hospital tried to bring the issue of the option's duration before the jury by requesting that the court give proposed Instruction D-2. The first portion of the hospital's offered instruction would have told the jury to find for the doctors if it believed that the hospital failed to negotiate. The hospital's proposed instruction would also have told the jury to find in favor of the doctors if the hospital had failed to afford the doctors with a reasonable time within which to accept its offer. Finally, the hospital's offered instruction would have told the jury to find for the hospital if the jury found that the doctors had failed to accept the hospital's offer within a reasonable time.

The last portion of the instruction is misleading because the doctors were under no obligation to *accept* the hospital's offer within a reasonable time. The only obligation of the parties was to negotiate in good faith, and if no agreement could be reached within a reasonable time, absent action under *Cassinari,* the option would expire.

Whether it was error to refuse the offered instruction or not, not giving the instruction necessarily left the jury with the impression that the option would remain open for an indefinite time. Without an instruction on the reasonable duration of the option, we are left with a situation in which, as the hospital complains, ''there was no time period established by which the [parties] were required to consummate the negotiations.''

There were large damage verdicts in the case, based presumably on the breach by the hospital of an option agreement which a jury properly instructed could have found to have expired by reason of passage of time.

The parties failed to settle on the new rent during January, February, March and April of 1980. In April the hospital sent a letter to the doctors telling them that it would ''be necessary that you vacate'' the space by June 1, 1980. At this time the doctors were not paying rent, and it appeared to the hospital that negotiations had broken down. As stated, the doctors could have chosen to pursue their lessees' interest and ask the courts to set a reasonable rent. Instead, they decided to move.

Properly instructed, a jury could have found that negotiations had failed, that the option had died and that the parties should be left to their own resources.

The doctors chose to vacate the premises and sue for breach of the option agreement. Negotiations could have reasonably been seen by the jury to have terminated on January 25, the end of the

doctors' "escape" privilege, or at the time the doctors removed themselves, or at the time they filed suit in December of 1980 or at some other time. Failure of the parties to reach an agreement was failure of a vital term of the option. Absent an agreement on the rent within a reasonable time (or a judicial determination of reasonable rent), there was no option, there was no new lease, there was no breach of contract.

Under the instructions as given in this case the jury was necessarily unaware of the relative rights of the parties. They did not know that the option could end as a result of the passage of time or the conduct of the parties. In a way the jury was led to decide for the doctors merely because the parties were unable to reach an agreement on the new rental payable on exercise of the option. Certainly no liability of any party arises out of the simple inability to negotiate and arrive at a rental agreement in writing. The court's instructions did not frame the issues between the hospital and the doctors, and a fair trial was denied the parties. We reverse and remand so that the case can be tried in a manner that makes the jury aware of the legal obligations of the parties. The hospital's breach, if any, must be defined in terms of its having breached or repudiated a valid and subsisting agreement. Since this issue has not been litigated, we reverse and remand this cause so that it can be litigated in accordance with the principles announced in this opinion.

GUNDERSON, C. J., and YOUNG and MOWBRAY, JJ., concur.

STEFFEN, J., dissenting:

If the hospital had defended this action on the basis that the doctors had adopted a negotiation strategy of belligerence, hostility and bad faith regarding the terms of lease renewal, I suspect the need for this dissent would have been obviated. However, the hospital repeatedly has emphasized that it rested its entire case on a single argument: that after a reasonable time passed without agreement on a rental rate, the doctors' power to exercise the option lapsed. That contention is meritless, for the options were exercised, by their very wording, when notice was given. Thus, the legal effect of the passage of a "reasonable" time without agreement was that a court would imply a "reasonable" rent for the renewal term. Cassinari v. Mapes, 91 Nev. 778, 542 P.2d 1069 (1975). There is evidence that the doctors failed to pay any rent, reasonable or otherwise, during portions of their negotiations. Therefore, an eviction for nonpayment of rent might have been proper. However, the eviction which took place was based,

expressly and solely, on expiration of the option. Thus, on the sole legal theory chosen by the hospital, I suggest that the hospital's appeal should fail.

Moreover, I know of no legal basis for the majority's conclusion that a jury, properly instructed, could find that the option had "died." The option had, in fact, been exercised. It was no longer subject to death, expiration or debate over its duration. Nor was it necessary for the doctors to resist the hospital's eviction notice as a prerequisite for an action for breach of contract.

Based upon the hospital's theory of defense, there was substantial evidence to support the jury's verdict favoring the doctors. Accordingly, that verdict should stand. Steen v. Gass, 85 Nev. 249, 253, 454 P.2d 94, 97 (1969). I therefore respectfully dissent.